EVA T. REYNOLDS v. ATLAS ACCIDENT INSURANCE COMPANY.[1]

June 23, 1897.

Nos. 10,631—(228).

Accident Insurance—Indorsement of Application on Policy.

An accident insurance policy provided that, "in consideration of the warranties and agreements contained in the application indorsed hereon," the company accepted him as a member, "subject * * * to all conditions indorsed hereon." One of the conditions indorsed on the policy was that "the application for membership is made a part of this contract, and printed thereon." *Held*, that attaching a copy of the application to the back of the policy with mucilage or some similar substance, and delivering the same to the insured, constituted an "indorsement" of the application upon the policy, within the meaning of the contract.

Same—Answers in Application—Waiver.

The answer to a question required to be answered categorically was indistinctly written in the original application, appearing to consist of

[1] Reported in 71 N. W. 831.

the letter "n" and a part of the letter "o," but in the copy attached to the policy and delivered to the insured the answer was clearly and distinctly written "No." The insured retained this for over three years, and until his death, without objection, and without suggestion that it did not correctly state his answer to the question. *Held*, that there was no error in refusing to submit to the jury the question what the answer actually was; that, even if the answer as written in the original application was illegible, the insured, by retaining the copy of the application attached to the policy without objection, must be held to have approved of it, and accepted it as containing his answer to the question.

Appeal by plaintiff from an order of the district court for Hennepin county, Elliott, J., denying her motion for a new trial. Affirmed.

*Morse & Sweetser*, for appellant.

*Smith & Parsons*, for respondent.

MITCHELL, J.

In April, 1893, the defendant issued to George L. Reynolds an accident insurance policy, whereby, "in consideration of the warranties and agreements contained in the application indorsed hereon," it accepted him as a member of the company, "and subject both to the conditions, agreements, and limitations herein contained, and to all conditions indorsed hereon," insured him against the effects of bodily injuries caused solely by external violent and accidental means in various sums, according to the nature and extent of the injury, in case it did not result in death; but "if such injury alone shall result in the death of the insured, within ninety days thereafter the company will pay $5,000 to Eva T. Reynolds, his wife, if surviving." Among the conditions printed on the back of the policy were the following:

"The application for membership is made a part of this contract and printed thereon. Fraud or concealment in obtaining membership * * * shall make this contract and insurance void. * * * The provisions and conditions aforesaid * * * are conditions precedent to the insurance hereof, and to its validity and enforcement."

Reynolds' application for membership, signed by him, stated that:

"Membership to be based upon the following statement of facts, which are warranted by me to be true and complete."

This application was all printed, except Reynolds' answers to the questions propounded to him, and his signature. It contained seventeen questions to be answered by the applicant, five of which required categorical answers of "Yes" or "No." The sixteenth question was:

"Have you ever had paralysis or fits of any kind, or are you subject to, or affected by, any bodily or mental infirmity, or have you suffered the loss of a limb?"

It appeared that the answers were all in the handwriting of an agent of the defendant who took Reynolds' application, but who had no personal recollection of the transaction at the time of the trial. The answers to the questions requiring categorical answers, including the sixteenth, were indistinctly written, all of them appearing to consist of the letter "n" followed by a part of the letter "o." None of them had any resemblance to the word "Yes," and, as suggested by the trial judge, we think "an inspection of the application will satisfy any disinterested person that there is no ambiguity as to the answer to the inquiry about fits,"—that it was clearly intended for the word "No," although indistinctly written.

This application was forwarded to the company, which executed the policy, and attached to the back thereof, with mucilage or some similar substance, a copy of the application, and forwarded the same to the insured, the original application being retained by the company. The instrument attached to the back of the policy was an exact copy of the original application, except that the categorical answers to the five questions referred to, including the sixteenth, were very clearly and distinctly written "No." The policy, with this copy of the application attached, was retained by the insured in his possession, without objection, so far as appears, until his death, over three years afterwards. About the last of April, 1896, the insured, while driving a team attached to a load of lumber along a country road, from some cause that can only be conjectured, fell off the wagon, and was run over by one of its wheels, and thereby received injuries from which he died almost immediately. His widow, as the beneficiary, brought this action on the policy.

One of the defenses interposed by the defendant was misrepresentation and concealment of the deceased in obtaining membership,

and especially misrepresentation and falsehood in his answer to the sixteenth question in the application already referred to. The evidence is uncontradicted that the deceased was, at the time he made the application for insurance, and for some years before had been, and up to the time of his death continued to be, subject to quite severe epileptic fits at longer or shorter intervals. Upon the foregoing state of the evidence, when plaintiff rested, the court, on motion of the defendant, dismissed the action.

1. The first and main contention of the plaintiff's counsel is that the application for membership was not "indorsed" upon the policy as therein provided, and therefore it is no part of it, and the defendant cannot claim by way of defense the benefit of anything contained in the application. His claim is that "attached" is not "indorsed"; that the latter word means written or printed upon the back of the same paper upon which are written or printed the terms of what is properly called the "policy."

We cannot agree with counsel. The word "indorsed," as used in this policy, is not to be construed in the technical sense in which it is used in the law merchant as applied to bills of exchange or promissory notes, where it means written on the bill or note itself, but in the more primitive and popular sense of something written or printed upon or attached to a document, upon the opposite side of which something else had been previously written or printed. Where an application is made a part of the policy, provisions in the policy for incorporating the application into the policy or attaching it thereto, or statutes requiring this to be done, have for their object the protection of both the insurer and the insured against controversies growing out of alleged fraud or mistake in the statements made in the application. These applications are usually filled up by an agent of the insurer. Although correctly filled up according to the answers given by the applicant, yet, when a loss occurs, the insured or his beneficiaries may claim that correct answers were given, but not correctly inserted in the application. On the other hand, although correct answers may have been given, they may have been, by mistake or fraud, incorrectly stated in the application, and after the death of the insured his beneficiaries may be confronted with it as a ground of avoiding the policy, when it is no longer possible to prove its inaccuracy. But if a copy of the application is in

some way attached to or inserted in the policy delivered to the insured, he may always, by reference to it, fully ascertain its contents, and all the terms and conditions of his contract, and, if any of his alleged answers are incorrectly stated, he may repudiate them, and demand their correction. On the other hand, if he retains the policy without objection, he will be deemed to have approved of it, and accepted it as correctly stating his answers, so that neither he nor his beneficiaries can say that the answers were inserted incorrectly, and without his knowledge.

Hence the important and essential thing is not how, or in what particular manner, the application is attached to or contained in the policy, but that it shall be contained in or attached to it so as to furnish to the insured full knowledge of its contents by reference to the policy and the documents physically connected with it. Therefore in statutes, as in Pennsylvania, Iowa and Wisconsin, containing provisions having this same general object, we find the expressions, "contain copies," "attach to such policy or indorse thereon," and the like, used indiscriminately, indicating that the particular manner of attaching the application to the policy was deemed unimportant so long as it was in fact attached to, indorsed upon, or contained in it. We are therefore of opinion that attaching the copy of the application to the back of the policy was a substantial compliance with the provisions of the policy, so as to make the former a part of the latter.

2. It is contended that, in any event, the court erred in dismissing the action; that the answer in the original application was so far illegible as to render it ambiguous, and that the court should have left it to the jury to determine as a question of fact what the answer was as written. Conceding, for the sake of argument, that the answer in the original application was so far illegible as to leave in doubt what it was, the defendant had translated or interpreted it to the insured in the copy which it attached to the policy, and delivered to him. He retained it for three years without objection or suggestion that it did not contain his true answer to the question; and by so doing he must be deemed to have approved of it, and accepted it as his answer. The consequences of that approval and acceptance cannot now be avoided after his death. To permit

69 M.—7

this to be done would be to defeat, so far as the insurer is concerned, the very object of the provision for indorsing or attaching the application to the policy.

Upon the evidence there was no question of fact to submit to the jury. It was conclusively established that the answer of the deceased that he was not subject to fits was untrue, and there can be no doubt that the matter of the misrepresentation was material, and increased the risk of loss, and therefore avoided the policy. The action was properly dismissed on that ground. It therefore becomes unnecessary to consider the other questions discussed by counsel.

Order affirmed.