LUCAS KELLS v. WILLIAM F. WEBSTER.[1]

January 21, 1898.

Nos. 10,919—(233).

**Insolvency—Preferential Conveyance—Knowledge of Grantee—Evidence.**

Action by an assignee in insolvency to set aside a conveyance by his assignor to defendant's intestate, on the ground that it was made in contemplation of insolvency, with a view to give the deceased a preference on a pre-existing debt. *Held*, that the evidence justified a finding that the deceased purchased without any reasonable cause to believe that the vendor was insolvent.

**Same—G. S. 1894. § 5660—Testimony of Assignor as to Conversation with Deceased Grantee—Competency.**

Also that the assignor, because of interest in the event of the action, was not a competent witness for his assignee to testify as to conversations with the deceased relative to the transaction.

Appeal by plaintiff, as assignee in insolvency of Nehemiah P. Clarke and another, from an order of the district court for Stearns county, Baxter, J., denying his motion for a new trial after findings and order for judgment in favor of defendant, as administrator of the estate of Charles F. Powell, deceased. Affirmed.

*Hale, Morgan & Montgomery, Miner & Barto,* and *D. W. Bruckart,* for appellant.

*George H. Reynolds,* for respondent.

MITCHELL, J.

This action was brought by plaintiff, as assignee of Clarke, under the insolvency law of 1881, to set aside a sale of 12,000,000 feet of sawlogs made by Clarke to Powell, as is alleged, in contemplation of insolvency, and with a view of giving the latter a preference upon a pre-existing debt. Powell having died, the action was continued against his administrator. The court found that at the time of the sale Clarke was insolvent, and that he made it with a view to giving Powell a preference, but that the latter did not have rea-

1 Reported in 73 N. W. 962.

sonable cause at the time of the transfer to believe that Clarke was insolvent. It is assigned as error that this last finding was not justified by the evidence.

As the parties to the transaction seem to have been the only persons who had any personal knowledge of the negotiations between them leading up to the sale, and as Powell was dead, and the court held that Clarke was, under the statute, incompetent to testify as to conversations between him and the deceased, the evidence bearing upon the question of Powell's notice of Clarke's insolvency was almost entirely circumstantial. It appeared that Clarke was a large operator, engaged in various kinds of business, among which were buying and selling logs, manufacturing logs into lumber, conducting a bank at St. Cloud, selling horses, etc. He did not own a sawmill, but the logs which he manufactured into lumber were cut at the mills of other parties in Minneapolis.

The undisputed evidence is that, prior to and at the time of the sale to Powell, he was reputed in the community where he lived to be not only solvent, but a man of large wealth. Powell had been a hardware merchant, but had retired from the business some years before, apparently a man of quite considerable wealth. After retiring from mercantile pursuits, his principal business seems to have been investing his capital, largely by lending his money, but also in part by buying timber lands. He had been engaged in several "outside speculations," but never before in the business of manufacturing lumber. As a rule, he was not in the habit of engaging in business enterprises which required his going largely into debt. His home was in Minneapolis, but he spent a considerable part of his time in St. Cloud, where Clarke resided.

When he made the purchase from Clarke he had recently returned from a two-months visit to California. At this time he and members of his family held certificates of deposit for several thousands of dollars in Clarke's bank in St. Cloud. He also held Clarke's promissory notes for borrowed money to the amount of between $32,000 and $33,000, none of which were yet due, but had from four to ten months to run. It appears that these notes were mostly renewals of prior notes. The negotiations leading to the purchase of the logs were opened by Clarke. The purchase price was six

dollars per thousand feet, amounting in all to $72,000, which was the reasonable value of the logs. In payment Powell turned in the notes and certificates of deposit which he held against Clarke, and for the balance, about $34,000, he gave his own notes, eight in number, payable in from five to twelve months, all of which have been paid. The 12,000,000 feet thus sold comprised the greater part of the logs which Clarke then owned. After the purchase Powell proceeded to have the logs manufactured into lumber at Minneapolis. The evidence tends to show that he made no personal investigation as to the quality or location of the logs, and hence must have relied mainly on Clarke's statements. But if he believed that Clarke was a man of large means, as he was reputed to be, this would not be very extraordinary, especially as Clarke was bound by the terms of the contract to deliver all the logs within the limits of the Mississippi and Rum River Boom.

This is substantially all the evidence bearing on the question whether Powell had, at the time of the purchase, reasonable cause to believe that Clarke was insolvent. Even conceding that it would have justified, it certainly did not require, a finding against the defendant on that issue. While, on the one hand, it is not necessary, in order to avoid a conveyance as a forbidden preference, that the purchaser shall actually know that the vendor is insolvent, yet, on the other hand, it is not sufficient that he entertains a mere suspicion that the vendor may be insolvent. While he cannot shut his eyes to suspicious circumstances which should put him on inquiry, yet he must have reasonable cause to believe that his vendor is insolvent. This was the construction given to this provision in the federal bankrupt act, from which we borrowed it. Grant v. National, 97 U. S. 80; Stucky v. Masonic, 108 U. S. 74, 2 Sup. Ct. 219. This has been adopted and followed by this court. Daniels v. Bank, 35 Minn. 351, 29 N. W. 165.

Really, all the plaintiff claims for the evidence is that the transaction on part of Clarke was so out of the usual course of business that it ought to have put Powell upon inquiry, which, if made, would have disclosed Clarke's insolvency; also that the transaction on Powell's part was so unusual and peculiar that he must have gone into it for the purpose of collecting a debt from a man whom

he believed to be insolvent. This is an argument that is entitled to weight, but it is by no means conclusive. Clarke might have been entirely solvent, and yet have been desirous of selling the logs for the purpose of converting them into a more available form, or to provide means to reduce his indebtedness. On the other hand, Powell, without any reasonable cause to believe that Clarke was insolvent, might have made the deal both for the purpose of collecting his large debt against Clarke, and also with a view to realizing anticipated profits from manufacturing the logs into lumber. An important, if not controlling, fact is that Clarke was generally reputed to be a man of large wealth; and there was nothing, so far as appears, to suggest to Powell that this was not true, unless it was to be found in the nature of the transaction itself. But there was nothing in that which would necessarily furnish reasonable cause to believe that Clarke was insolvent.

2. The plaintiff tendered Clarke as a witness to prove the conversations between himself and Powell relative to the transaction. The court held that Clarke was incompetent to testify on the subject, because he was interested in the event of the suit, and Powell was dead. This ruling was assigned as error.

We have held that the expression, "interested in the event" of any action, is used in the statute in the sense in which it was used at common law; that the interest must be legal, certain and immediate, either in the event of the cause itself, or in the record as an instrument of evidence for or against the person in another action; that the interest must be pecuniary, certain, direct and immediate, and not uncertain, contingent, remote, or a mere possible interest. Perine v. Grand Lodge, 48 Minn. 82, 50 N. W. 1022. We are of opinion that Clarke was thus interested in the event of this action, and that, too, without regard to whether there would or would not probably be a surplus of property to be returned to him after his debts were all paid. It was his property which was assigned. He was interested in having it applied in the payment of his debts. His liability for his debts was absolute, and not contingent. He was also interested, or at least must be conclusively presumed to have been, in increasing the fund in the hands of his assignee, so as to pay as much of his debts as possible. It was on

this ground that we held that an assignor, as a party in interest, had a right to appeal from an order of the court allowing extra compensation to a receiver. Reeves v. Hastings, 61 Minn. 254, 63 N. W. 633.

Under every form of bankrupt law, from the earliest times, it has been uniformly held, wherever the common-law rule as to the competency of witnesses remains in force, that a bankrupt was not a competent witness, in an action by his assignees to prove any fact tending to increase the fund, at least unless he had first released his allowance and surplus, and also obtained his certificate, without which he was in no case a competent witness for his assignees. 1 Greenleaf, Ev. § 392, and cases cited in note 4. While the decisions may not always have given the same or the right reason why the bankrupt was, in legal contemplation, "interested in the event" of the action, they all agreed that, in the absence of the prerequisites above referred to, he was not a competent witness.

It is true that our insolvent law differs in some respects from its predecessors. For instance, under our law, an insolvent is not entitled to any allowance out of the assigned property because the assignment does not convey his exempt property. But, on the other hand, under the English and federal bankruptcy acts, a debtor received his certificate of discharge, unless refused for cause, from all his debts, whether proved against his estate or not, while under our act he is only discharged from the demands of such creditors as prove their claims and file releases.

It is suggested that, if this sale is set aside, the estate of Powell will have a provable claim against Clarke's estate for the purchase price of the logs, which will increase the debts by the same amount as the funds in the hands of the assignee will be increased by a recovery in this action, and therefore Clarke was not interested in the event. The premises are presumably correct, but the conclusion drawn from them is not. A recovery in this suit will materially increase the dividend to be paid to creditors, a fact which might materially affect the number of creditors who would file their claims. It may also be suggested that, however great the apparent disparity between the value of the assets and the amount of the debts, it can never be determined, in legal contemplation,

that there will be no surplus, until the trust under the assignment is fully administered. Hence, so far as we can discern, there is no case to be found where, under the common-law rules, it was ever held that such apparent disparity dispensed with the necessity of the bankrupt's formal release of the surplus, in order to render him a competent witness for his assignees.

There is another fact worthy of consideration. The common-law rule that persons interested in the event of the action were not competent witnesses was unreasonable and unjust, and was therefore long looked upon with disfavor by the courts, and, as a consequence, they were constantly striving to cut it down by construction, or evade it as far as possible. But the provision in our statute, which is limited to conversations with or admissions of a deceased or insane person who is incapable of testifying in his own behalf, is founded on the plainest principles of common justice and fair play, and, so far from being cut down or evaded by construction, ought to be favored and liberally construed, so as to effect the purpose of its enactment. Our conclusion is that the ruling of the court was correct.

Order affirmed.