## MAE T. SCOTT v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

February 9, 1940.

No. 32,230.

[1]Reported in 290 N. W. 431.

See 203 Minn. 547, 282 N. W. 467.
*Meighen, Knudson & Sturtz,* for appellant.
*Shearer, Byard & Trogner,* for respondent.

STONE, JUSTICE.

Action on a policy of life insurance. The insured departed this life within the period of contestability for suicide, in which event plaintiff, as beneficiary, would be entitled only to recovery of premiums. The case has been tried twice. Both juries awarded plaintiff the amount of the premiums, finding for defendant on the issue of suicide. Plaintiff appeals from the order denying her a new trial.

After the first trial there was a similar appeal. Scott v. Prudential Ins. Co. 203 Minn. 547, 282 N. W. 467. To that decision we refer for many details which need no restatement.

August 28, 1936, deceased came to his death by gunshot while alone in his small truck near Albert Lea. He and his apparently happy family, a wife and 14-year-old son, lived in that city, where he had been, for upwards of a year, the agent in charge of the Continental Oil Company's bulk station. At about three o'clock

p. m. Mr. Neville, auditor of the Continental company, appeared at Scott's station to make a periodic audit. Scott did not stay to assist in the audit, but instead, after going to his home, and without explanation, drove into the country alone. It was his custom to carry with him a short, single-barrel, 410-gauge shotgun. Later in the afternoon he was found in the truck, which had come to rest in the ditch alongside a country road. The gun had been discharged close to Mr. Scott's right temple, with immediately fatal result.

The issue of suicide was one of fact. The appeal is put exclusively upon errors of law, which we consider in their order, with some additional, explanatory facts.

1-2. Error is assigned upon the exclusion of certain conversations between deceased and plaintiff on the afternoon of and shortly before Mr. Scott's death. The offer of proof by plaintiff was that "she and her husband talked together, and to show the length of the conversation, and that in the conversation he appeared normal in every way." The purpose was to show the mental attitude and demeanor of Mr. Scott just before his fatal departure from home. That was fully gone into. Both wife and son testified as to his appearance and demeanor. It was the son's fifteenth birthday, and the family plans for its observance and the participation of Mr. Scott therein was shown. In Mrs. Scott's opinion, he appeared "just as usual." So far as she observed, he was content in his work and without "financial troubles." With such a showing, the entire proper objective of the offered evidence was achieved. Even if there was error, which there was not, there was no prejudice in the exclusion of the offered conversation.

The foregoing is not altogether responsive to some argument for plaintiff, which is that the rulings excluded conversations between husband and wife which would have shown the "plans" of Mr. Scott. As we held when the case was here before, his plans for that afternoon, if any, could have been shown. Scott v. Prudential Ins. Co. 203 Minn. 547, 552, 282 N. W. 467. But

plaintiff's testimony as to her talk with her husband concerning such plans was incompetent under 2 Mason Minn. St. 1927, § 9817. The effort was to bring the conversation within the "verbal act" rule of In re Will of Brown, 38 Minn. 112, 35 N. W. 726.

The statute bars any party to an action or anyone interested in the event thereof from giving evidence "of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties." So those conversations which are admissible under the "verbal act" rule to show the condition of the speaker's mind rather than its operation in expression of recollection or intention must be those which do *not* "relate to the particular issue in the case." Dougherty v. Garrick, 184 Minn. 436, 441, 239 N. W. 153, 155, 77 A. L. R. 1286. Here the issue was suicide, and the plans were irrelevant unless they did relate to that issue. Insofar as Scott's conversations with plaintiff may have shown plans which related to the presence or absence of motive for or intention of suicide, they were barred.

Judges and text writers (Morgan, Law of Evidence; p. 23, *et seq.;* 1 Wigmore, Evidence [2 ed.] § 578) do not like the statutes excluding otherwise competent evidence of the talk of persons since deceased. But they are of the law which we are sworn to obey. Judicial erosion of a statute by unwarranted narrowness of interpretation and resulting artificial exception is as much forbidden as outright judicial disobedience. Evasion, under the guise of construction, is barred.

The assumption that the statute should be strictly construed originated with Chadwick v. Cornish, 26 Minn. 28, 1 N. W. 55. As there shown, the statute is a resurrection of part of the discarded common-law rule that all interested parties were incompetent as witnesses. Furthermore, as Mr. Chief Justice Gilfillan demonstrated in his history of the law, it did not, as first enacted, seem to go far enough in practice. It was twice amended and broadened into its present form, which it has retained since.

L. 1877, c. 40; G. S. 1878, c. 73, § 8. To the extent of the legis·lative resurrection, the thing should have life and function. Judges have no right to maim or bleed it to death by a construc·tion so "strict" as to result in judicial mayhem.

· The strict construction of the earlier cases was condemned and the statute commended as one to be liberally construed in Kells v. Webster, 71 Minn. 276, 281, 73 N. W. 962, a case overlooked by some later dicta of strict construction, *e. g.*, Finn v. Modern Brotherhood, 118 Minn. 307, 310, 136 N. W. 850. Anyway, we have discarded all notion that we have any right, by construction so strict as to be arbitrary rather than fair, to destroy or even limit the operation of a statute. Our task is by a fair and rea·sonable construction to accomplish its purpose—to make it work to the full extent intended by the legislature. State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 251 N. W. 275; Wells-Dickey Trust Co. v. C. B. & Q. R. Co. 159 Minn. 417, 199 N. W. 101. That being our duty, any extension of the "verbal act" doctrine in further derogation of the statute cannot be allowed. It permits evidence of conversations showing the mental condition of the speaker. But it does not in any case permit evidence of conversations showing an intention for the future and relative to the very transaction in issue. See Dough·erty v. Garrick, 184 Minn. 436, 239 N. W. 153, 77 A. L. R. 1286, where many of our cases are reviewed and where it is emphasized that such statements are not admissible simply because they happen to be part of the *res gestae* and not hearsay. The statute explicitly bars them. That is enough.

3. The amount of the policy was $6,000. Plaintiff offered proof, which was excluded, that decedent had habitually carried about that amount of life insurance. On the exclusion of that evidence error is assigned. It was not claimed for defendant that the policy was procured with intention of suicide or that its pro·curement indicated such a purpose. Although the admission of the evidence would not have been error, we are clear that its exclusion was not. It is one of those points of admission or

exclusion which, in almost all jury trials, are matter for the discretion of the trial judge. Under the circumstances, there appears no abuse of that discretion.

4. Most stressed for plaintiff is the admission over objection of the result of two audits of the accounts of as many filling stations which had been in charge of Mr. Scott. Formerly he had been employed by the Phillips Petroleum Company. In May, 1935, a Mr. Stanch, auditor for that company, audited the accounts of a station of which Mr. Scott was in charge. The resulting findings showed a shortage. More important, Mr. Scott was promptly "checked out" by the auditor and had to find another job. In view of the later history of Mr. Scott and the circumstantial setting of his death, we think that the testimony concerning the Stanch audit was clearly admissible. Incidentally, Mr. Scott acknowledged the correctness of that audit. It was fully gone into at the first trial without exception from plaintiff and without challenge on appeal.

We have referred to the visit of the auditor on the afternoon of Mr. Scott's death. Scott, of course, knew its purpose. He waited neither to assist nor learn the result. The audit was not finished during his lifetime. But the auditor, Neville, promptly completed his work and found a shortage of $476.

The Neville audit was part of the relevant history of the fatal afternoon. The inventory was made by the auditor. So far as invoices were a factor, they were those in Scott's possession. It was no objection that an earlier audit of June 11, 1936, and the inventory then taken were used as a starting point for the Neville work. The earlier audit and inventory, as to result, must have been known to Scott and a part of the records of his station. His records and papers were available to plaintiff. The fact that later there was what the accountants call a reconciliation with the records of the employer's home office would not make the audit itself incompetent. Plaintiff has had abundant opportunity, if not before, then since the first trial, for successful attack upon Neville's work, if it was vulnerable. The admission of the

testimony of Neville about his audit and its result, together with the supporting exhibits, was not error.

There are other assignments of error, which have been considered but which do not justify discussion. They present no reversible error. For example, there is one going to the exclusion of the conversations between deceased and his son. They seem to have been quite fully gone into. Anyway, the demeanor of deceased, in conversation or otherwise, on the afternoon in question and before, was related at length.

The order is affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

