## EMIL ROBERT POMERENKE v. FARMERS LIFE INSURANCE COMPANY.[1]

April 8, 1949.

No. 34,861.

[1]Reported in 36 N. W. (2d) 703.

*Field, Field & Arvesen,* for appellant.
*Monson & Donoho,* for respondent.

MATSON, JUSTICE.

Defendant appeals from a judgment for plaintiff in an action on a nonmedical life insurance policy.

Upon the written application of Ida Pomerenke. dated May 29, 1946, the defendant, Farmers Life Insurance Company, on July 1,

1946, issued to her a $2,500 life insurance policy naming plaintiff, her husband, as beneficiary. About four months after signing the application, Ida died from epilepsy and anemia. For more than 20 years she had suffered from epilepsy, for which she had been treated by several doctors and for which she had been hospitalized and had taken medicines. In addition to epilepsy, she also suffered from anemia when the insurance application was signed; in fact, for this latter disease, she had, in April and May 1946, been hospitalized for two days and had received several injections and treatments. Contrary to specific instructions designed to elicit the information, Ida made no disclosure of these diseases in her insurance application. Upon receiving proof of death, defendant sought to rescind its insurance contract and tendered a return of the premium. This action upon the policy followed, and plaintiff was awarded a verdict of $2,500.

We have here a nonmedical risk, in that the policy is one that can be and is issued without a medical examination. The insurance salesman secures from the prospect a written application, which is forwarded to the head office of the insurance company, where, if it is approved and accepted, a policy is issued to the applicant. This was done in the instant case. Defendant's insurance salesman, Fred Smith, called at the Pomerenke farm on five different occasions before Ida signed the application. The principal issue upon this appeal involves the admissibility, over defendant's objection, of testimony concerning certain conversations which took place on two of these occasions. Concerning the first conversation, at which Smith, plaintiff, and plaintiff's brother, as well as the decedent, were present, plaintiff was permitted to testify that he then told Smith all about his wife's prolonged illness. Concerning the conversation on the fifth visit, when the insurance application was filled in and signed in the presence of Smith, plaintiff, and the decedent, plaintiff was permitted to testify that Smith did not ask decedent the questions found in the application as to diseases and that his wife signed the application without reading it. It is admitted that on both occasions decedent participated in both conversations "a little."

In addition to the issue of whether plaintiff, under M. S. A. 595.04, was incompetent to testify of and concerning a conversation at which the decedent was present and in which she participated to some small extent, we have three other issues, namely, (1) Whether plaintiff had the right to cross-examine defendant's insurance salesman under § 595.03, on the theory that he was one of defendant's "managing agents"; (2) whether a nonmedical standard life insurance policy is subject to the provisions of § 61.24; and (3) whether plaintiff beneficiary is barred by the act of the insured in signing the application without reading it and by later accepting and retaining the policy with the application attached without objecting to or correcting the erroneous answers therein recorded.

■ Plaintiff was permitted to call Fred Smith, defendant's insurance agent, for cross-examination under the statute (§ 595.03), which reads:

"A party to the record of any civil action * * * or the directors, officers, superintendent, or *managing agents* of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination * * *." (Italics supplied.)

Smith was not a director, officer, or superintendent of defendant. Was he one of defendant's "managing agents"? He was a general agent only in the limited sense that he could solicit insurance anywhere in Minnesota. His right to solicit nonmedical risks up to $3,000 gave him no authority to accept or reject risks. All applications were subject to approval at the home office. His assistance to beneficiaries in preparing proofs of death was merely a part of his selling service. Unlike a humble section foreman for a railroad company, he was not vested with even a minimum of discretionary control over defendant's employes or business. Garedpy v. C. M. St. P. & P. R. Co. 176 Minn. 331, 223 N. W. 605; see, 6 Dunnell, Dig. & Supp. § 10327. An insurance agent whose activities are confined solely to the solicitation and procurement of applications for insurance from prospective risks, and who has no authority to approve the applications, to accept or compromise insurance claims, to em-

ploy agents, or otherwise to supervise the insurance company's business, is not a managing agent subject to cross-examination pursuant to § 595.03. See, Blasius v. Hartford F. Ins. Co. 187 App. Div. 347, 175 N. Y. S. 709.[2] It was error to permit his cross-examination under the statute, but in the light of other evidence admitted it was not prejudicial.

■ A standard life insurance policy *issued without medical examination* is subject to § 61.24 and not to § 60.85. Hafner v. Prudential Ins. Co. 188 Minn. 481, 484, 247 N. W. 576, 578; Haan v. Palladium Nat. L. Ins. Co. 201 Minn. 135, 275 N. W. 689; Elness v. Prudential Ins. Co. 190 Minn. 169, 251 N. W. 183. The decision of McAlpine v. Fidelity & Cas. Co. 134 Minn. 192, 198, 158 N. W. 967, 970, is not to the contrary, in that we pointed out therein that § 61.24 might apply not only to industrial but also to other forms of life insurance.

■ Where an application for insurance is made out by an insurance agent in the course of his agency and the insured truthfully gives the agent the correct answers, but the agent records the answers in the application incorrectly without the fault, knowledge, or collusion of the insured, and the insured signs the application without first having read it—although he had the opportunity to do so—in reliance upon the good faith of the agent, the insurance company is not relieved from liability on the policy, and the act of the agent in recording incorrect answers is deemed the act of the insurer and not that of the insured.[3] The theory upon which this rule—which is the majority rule—rests is that the agent in making out the application acts for the insurer, and the insurer is therefore estopped to

---

[2]London G. & A. Co. v. Officer, 78 Colo. 441, 242 P. 989, obviously is not in point, in that the corporate representative had charge of the insurance company's business in four states.

[3]Kausal v. Minnesota Farmers' Mut. F. Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. R. 776; Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532; Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207; Oredson v. Woodmen of the World L. Ins. Society, 211 Minn. 442, 1 N. W. (2d) 413; see, 3 Dunnell, Dig. & Supp. § 4717.

assert the mistake.[4] No purpose is to be served by a discussion of the merits of a rule which is so well established. The rule, however, is confined strictly to those instances where the application is made out by an insurance agent acting in the scope of his agency.[5] It does not apply where the application is filled out in behalf of the insured by some person other than the insurance agent, such as a physician employed to examine the insured. Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600; Sorenson v. New York L. Ins. Co. 195 Minn. 298, 262 N. W. 868; Lawien v. Metropolitan L. Ins. Co. 211 Minn. 211, 300 N. W. 823. Here, the rule was correctly given in the court's charge to the jury, and there was no error.

■ If the insured accepts delivery and retains possession of a policy to which is attached his application for insurance—which in the first instance was made out by the insurance agent and which the insured in good faith signed without reading—he may rely upon the presumption that the application was made out correctly, and he is not required to examine the application to ascertain if the correct answers are incorporated therein, and his failure to do so does not bar any right of recovery under the policy. The above rule was adopted by this court 46 years ago (1903) in Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532, and has since been affirmed in Enge v. John Hancock Mut. L. Ins. Co. (1931) 183 Minn. 117, 236 N. W. 207; see, 17 Minn. L. Rev. 589. The rule is too well established to be now questioned. The earlier case of Reynolds v. Atlas Acc. Ins. Co. 69 Minn. 93, 71 N. W. 831, is expressly overruled.

■ Was plaintiff incompetent to testify concerning conversations held in the presence of the decedent and in which the decedent par-

---

[4]See, Annotations: 81 A. L. R. 833, 117 A. L. R. 790, 148 A. L. R. 507; 17 Minn. L. Rev. 589-601.

[5]Cf. two opinions by Mr. Justice Mitchell: Kausal v. Minnesota Farmers' Mut. F. Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. R., and Reynolds v. Atlas Acc. Ins. Co. 69 Minn. 93, 71 N. W. 831. The latter case involved retention by the insured of a policy with insurance application attached which contained erroneous answers.

ticipated "a little"? Plaintiff's testimony involved three elements, namely, (1) What he himself told the insurance agent about decedent's illness; (2) that the agent did not ask decedent the questions found in the application; and (3) that decedent signed the application without reading it. In Scott v. Prudential Ins. Co. 207 Minn. 131, 135, 290 N. W. 431, 433, in construing the statute (§ 595.04) prohibiting parties or persons interested in the event of an action from testifying to conversations with deceased persons, we pointed out that this court in Kells v. Webster, 71 Minn. 276, 281, 73 N. W. 962, 964, *condemned* the strict construction of the earlier cases. We went further and specifically cited Finn v. Modern Brotherhood, 118 Minn. 307, 310, 136 N. W. 850, 851, as having overlooked the rule of liberal construction adopted by the Kells case, and then we said:

"* * * Anyway, we have discarded all notion that we have any right, by construction so strict as to be arbitrary rather than fair, to destroy or even limit the operation of a statute. Our task is by a fair and reasonable construction to accomplish its purpose—to make it work to the full extent intended by the legislature."

In Cocker v. Cocker, 215 Minn. 565, 570, 10 N. W. (2d) 734, 736, we affirmed our disapproval of strict construction and again said that the statute is to be given "a fair and reasonable construction to accomplish its purpose—*to make it work to the full extent intended by the legislature*" (italics supplied), and we then quoted the language of Mr. Justice Mitchell in Kells v. Webster, 71 Minn. 276, 281, 73 N. W. 962, 964, to the effect that *the statute, "so far from being cut down or evaded by construction, ought to be favored and liberally construed, so as to effect the purpose of its enactment."* (Italics supplied.)

Apparently the rule of strict construction needs a formal burial. We therefore expressly overrule former decisions—inclusive of Finn v. Modern Brotherhood, 118 Minn. 307, 136 N. W. 850, and Thaden v. Bagan, 139 Minn. 46, 165 N. W. 864—insofar as they follow a rule of strict construction.

There should be no confusion about what is meant by a liberal construction or a fair and reasonable construction to accomplish the purpose of the statute. It simply means that the intent of the legislature is to be given full sway, even though the statute establishes a strict rule of evidence which without qualification excludes otherwise competent evidence of the conversations of persons since deceased. In other words, a liberal statutory construction may produce a statutory rule of evidence that is strict and of which judges and text writers may disapprove, but their disapproval gives no justification for disobeying the statute or for eroding or evading its meaning by a narrow or strict interpretation. Scott v. Prudential Ins. Co. 207 Minn. 131, 134, 290 N. W. 431, 433.

In giving § 595.04 a fair and reasonable construction to carry out the full intent of the legislature—and that necessarily coincides with the purpose of the statute—we hold that the trial court erred in permitting the testimony of plaintiff concerning the conversations in which the decedent participated "a little." In other words, she to some small extent took a direct verbal part. Insofar as she participated in the conversations at all, she was a party to them, and it is not for this court to distinguish between degrees of participation. Furthermore, by decedent's very conduct, she emphasized her participation when, in reliance upon and as a culmination of the conversations, she signed the application. The statute is directed against *evidence therein of or concerning any conversation with, or admission of,* a deceased person. The all-inclusive coverage of this language is not to be evaded by dissecting a *conversation with* a decedent so as to allow testimony of what participants other than the decedent said and then to supply the import of decedent's contribution by a process of negation. A *conversation with* a decedent is not a one-sided affair. in which only what the decedent said is to be considered. Even under the rule of Sievers v. Sievers, 189 Minn. 576, 250 N. W. 574, wherein we said that the statute should be given a fair construction, but somewhat strictly against the exclusion of evidence (a rule which has been superseded by the rule of the Scott

and Cocker cases), it was error to permit the testimony of plaintiff. The error was prejudicial, and a new trial is necessary.

The judgment appealed from is reversed and a new trial granted. Reversed and new trial ordered.

