# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2021
_____

Ser Yang and Xeng Yang

*Plaintiffs - Appellants*

v.

Western-Southern Life Assurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 12, 2012
Filed: April 25, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge

Soua Yang purchased a life insurance policy from Western-Southern Life Assurance Company (WSLAC). Yang died six months later. Her beneficiaries claimed the death benefit. WSLAC denied the claim on the basis that she had not disclosed her Hepatitis B on the application. Her beneficiaries sued WSLAC. The district court granted summary judgment to WSLAC. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

In 2009, Soua Yang, in the presence of her parents, applied for life insurance through WSLAC's agent, Kaojia Vang. Yang, a Hmong immigrant from southeast Asia, did not read English and spoke it very little. The application was written in English. The agent spoke fluent Hmong in addition to English. The agent asked Yang questions on the form in English, clarifying some in Hmong. The agent then entered the answers on the application form on her laptop. Question 4 asked, "In the past ten years has the person named above received or been advised to receive any medical or surgical treatment or test?" Question 5 asked, "In the past ten years has the person named above had or been treated for any abnormality or disease of [any body part]?" The agent recorded Yang's answers to both questions as "no."

In their affidavits, Yang's parents say that she told the agent that she had Hepatitis B, using the Hmong word, *kab mob siab B*. The parents also say she gave the agent the name, address, and phone number of her physician. Both parents swear that the agent stated that their daughter "looked very young and healthy and that once the policy was in effect she would be covered anyway." The parents also state that the agent never asked Question 4, and that their daughter did not examine the application after the agent completed it because she could not read English. The parents say that once the agent completed the application, their daughter signed where the agent directed.

In her affidavit, the agent says she asked Yang each question on the application and correctly recorded the answers. The agent states that once the application was complete, she reviewed each response with Yang, asking her to sign only after verifying the accuracy of her answers.

Three weeks after the application was signed, a WSLAC representative, assisted by a Hmong interpreter, called Yang and reviewed the questions with her. In that conversation, which was recorded, Yang denied receiving any medical treatment or

any medication in the last five years. Neither the recorded statement, nor a transcript, was attached to the application or the policy. Two months after Yang applied, WSLAC issued a life insurance policy.

Yang had been diagnosed with Hepatitis B in 2004, receiving treatment and medication for it. If Yang's application had disclosed that fact, WSLAC would not have issued a policy. After the policy was in effect for four months, Yang died of hypoxic encephalopathy caused by Lupus. Yang's beneficiaries, her brothers, filed a claim for the death benefit. WSLAC denied the claim and attempted to rescind the policy. WSLAC refunded all premiums paid under the policy (but the beneficiaries did not cash the check).

After removal, the district court granted summary judgement to WSLAC. *Yang v. Western-Southern Life Assur. Co.*, No. 11-2492, 2012 WL 1072346 (D. Minn. Mar. 30, 2012).

## II.

"This court reviews de novo a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant." *General Mills Ops., LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th. Cir. 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. "Summary judgment is not appropriate if the nonmoving party can set forth specific facts, by affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial." *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

Minnesota law states, "In any claim upon a policy issued in this state without previous medical examination, . . . the statements made in the application as to the

age, physical condition, and family history of the insured shall be valid and binding upon the company, unless willfully false or intentionally misleading." **Minn. Stat. § 61A.11**. "[T]he phrase 'wilfully false or intentionally misleading' as used in Minn. Stat. 61A.11 does not *require* that there be an intent to deceive." *Ellis v. Great-West Life Assur. Co.*, 43 F.3d 382, 387 (8th Cir. 1994). "All that is required is that the insured have full knowledge of the facts that are concealed and that the concealed facts probably would have precluded issuance of the policy if known to the insurance company." *Id.* Once an insurance company discovers that the insured made a willfully false representation "which is material and which increases the contractual risk undertaken by the insurer," the company may void the insurance contract. *Howard v. Aid Ass'n for Lutherans*, 272 N.W.2d 910, 912 (Minn. 1978).

For most contracts, "Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent." *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 102 (Minn. Ct. App. 2004), *citing Speckel by Speckel v. Perkins*, 364 N.W.2d 890, 893 (Minn. Ct. App. 1985). But:

> Where an application for insurance is made out by an insurance agent in the course of his agency and the insured truthfully gives the agent the correct answers, but the agent records the answers in the application incorrectly without the fault, knowledge, or collusion of the insured, and the insured signs the application without first having read it – although he had the opportunity to do so – in reliance upon the good faith of the agent, the insurance company is not relieved from liability on the policy, and the act of the agent in recording incorrect answers is deemed the act of the insurer and not that of the insured.

*Pomerenke v. Farmers Life Ins. Co.*, 36 N.W.2d 703, 706 (Minn. 1949).[1]

---

[1]The parties apparently did not call the *Pomerenke* case to the attention of the district court.

A party normally is obligated to "learn and know the contents of a contract before he signs and delivers it." ***Hoshaw v. Cosgriff***, 247 F. 22, 26 (8th Cir. 1917). But, under *Pomerenke*:

> If the insured accepts delivery and retains possession of a policy to which is attached his application for insurance – which in the first instance was made out by the insurance agent and which the insured in good faith signed without reading – he may rely upon the presumption that the application was made out correctly, and he is not required to examine the application to ascertain if the correct answers are incorporated therein, and his failure to do so does not bar any right of recovery under the policy.

***Pomerenke***, 36 N.W.2d at 706-07. Viewing the facts most favorably to the beneficiaries, a reasonable jury could find that Yang relied in good faith on the agent's completing the application correctly. *Pomerenke* also renders Yang's inability to read English irrelevant on the facts here.

WSLAC argues that under the application's language, Yang's signature affirmed the accuracy of the answers on the application. Four lines above her signature, WSLAC's application says, "I . . . have carefully reviewed each and every statement and answer on pages 1 through 5 of this application and represent that they are true and complete to the best of my . . . knowledge and belief." Unfortunately for WSLAC, an application's language cannot circumvent Minnesota Statute 61A.11 and the *Pomerenke* decision. *See **Schmidt v. Prudential Ins. Co. of Am***., 251 N.W. 683, 685-86 (Minn. 1933) (holding that the provisions of an earlier statute – with language nearly identical to section 61A.11 – could not be circumvented by a condition in the policy that it not take effect if the insured is not in sound health at the date of the policy).

WSLAC mistakenly relies on *Patch v. Am. Summit Ins. Co.*, 1997 WL 20336 (Minn. Ct. App. Jan. 21, 1997) (unpublished). There, the insured homeowner testified at trial that he reviewed the insurance application, which contained false information, after the agent completed it and before signing it. *Patch*, 1997 WL 20336 at *2. The court affirmed summary judgment for the company, distinguishing *Pomerenke* because Patch admitted knowing the application was false before signing it. *Id.* Construing the facts most favorably to the beneficiaries, Yang did not.[2]

In the other cases cited by WSLAC, the company was not liable due to the insured's knowledge of misrepresentations in the application. *See LeBus v. Nw. Life Ins. Co.*, 55 F.3d 1374, 1377 (8th Cir. 1995) (undisputed facts showed insured "concealed relevant facts of which he was fully aware"); *First Trust Co. of St. Paul v. Kansas City Life Ins. Co.*, 79 F.2d 48, 54 (8th Cir. 1935) (the only rational explanation of insured's conduct was a desire to conceal facts and deceive the company); *Hammer v. Investors Life Ins. Co. of N. Am.*, 511 N.W.2d 6, 9 (Minn. 1994) (jury should determine whether insured's misrepresentation was an inaccuracy or willfully false or intentionally misleading); *Steigerwalt v. Woodhead Co., Inc.*, 244 N.W. 412, 413 (Minn. 1932) (insured knew the agent recorded his age incorrectly); *Mattson v. Modern Samaritans*, 98 N.W. 330, 331 (Minn. 1904) (if insured knew his application contained misrepresentations, the company would not be liable); *Ambroz v. Minn. Life Ins. Co.*, No. A09-1888, 2010 WL 2572556, at *4 (Minn. Ct. App. June

_____

[2]Further, the policy in *Patch* was for homeowner's insurance, governed by Minnesota Statute 60A.08, rather than 61A.11. *Patch*, 1997 WL 20336 at *2. Under section 60A.08, "No oral or written misrepresentation made by the assured, *or in the assured's behalf*, . . . shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, *or unless the matter misrepresented increases the risk of loss*. **Minn. Stat. § 60A.08**, **subd. 9** (emphasis added). That statute includes a lower option for the materiality of misrepresentations than does section 61A.11. *See Ellis*, 43 F.3d at 387 (requiring *insured's* full knowledge of the misrepresentation of facts that probably would have *precluded issuance* of the policy).

29, 2010) (unpublished) (facts reasonably supported district court's finding that insured knew she had condition she did not report in the application); ***Berthiaume v. Minn. Mut. Life Ins. Co.***, 388 N.W.2d 15, 16, 19 (Minn. Ct. App. 1986) (insured knew he had high blood pressure, but denied it in his application); ***Useldinger v. Old Republic Life Ins. Co.***, 377 N.W.2d 32, 33, 36-37 (Minn. Ct. App. 1985) (insured knew he had high blood pressure, but denied it in his application; he also knew he had cirrhosis of the liver, but denied having any serious illness or disorder in the application).

More relevant here are two decisions of the Minnesota Supreme Court. In *Hafner v. Prudential Ins. Co. of Am.*, 247 N.W. 576, 577 (Minn. 1933), the company denied a claim based on misrepresentations in the life insurance application. The jury found for the beneficiaries, although the agent claimed he asked the insured each question on the application and correctly recorded her answers. ***Hafner***, 247 N.W. at 577-78. The insured's father testified that the agent in fact had not asked any questions, completing the answers based on notes from a notebook. ***Id.*** A reasonable jury could similarly resolve the disputed testimony here.

In *Enge v. John Hancock Mut. Life. Ins. Co.*, 236 N.W. 207, 210 (Minn. 1931), the insured "advised the agent that he had 'a bum right lung'"; the agent replied that "that made no difference." The court held that the agent's statement "confirm[ed] Enge's justifiable presumption that his answers were being correctly recorded." ***Enge***, 236 N.W. at 210. The court found that the "bum right lung" statement put the agent on notice that the insured had tuberculosis, making the company liable on the policy, despite no reference to a bad right lung or tuberculosis in the application. ***Id.*** at 209. A reasonable jury could similarly find that Yang put the agent on notice that she had Hepatitis B.

WSLAC contends that the telephone conversation transcript demonstrates that Yang made willfully false or intentionally misleading statements before the policy was issued. WSLAC's policy, in a section labeled "Limits on Our Contesting this Policy,"

declares: "No statement will be used in contesting this policy or any rider unless it is in an application or supplemental application and a copy of such application is attached to this policy." Neither a transcript of the telephone conversation nor the recording itself was attached to the application or the policy. WSLAC argues that the transcript was rightfully considered by the district court because "the transcript is not being used to contest the Policy, but is only being used to show that Ms. Yang had indeed been asked the questions found in the Application."

"[T]he term 'contest' is generally interpreted to mean some action taken in a judicial proceeding to cancel the policy or prevent its enforcement." *Suskind v. N. Am. Life & Cas. Co.*, 607 F.2d 76, 80 (3d Cir. 1979). WSLAC is using the transcript to cancel the policy and prevent its enforcement by demonstrating that Yang made willfully false or intentionally misleading statements. This violates the words of WSLAC's policy. The transcript therefore should not have been considered.

A reasonable jury could conclude that Yang gave truthful answers about her medical condition and that the agent recorded them incorrectly. It could also conclude that Yang did not examine the application. The disputed facts are material because there is a genuine issue whether Yang knew of misrepresentations in the application. Summary judgment was not appropriate.

*******

The judgment of the district court is reversed, and the case remanded.

_____

-8-