*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-2027**

Selective Insurance Company of South Carolina,
Respondent,

vs.

Quoc D. Huynh, et al.,
Defendants,

Quoc D. Huynh,
Third party plaintiff,

vs.

Nathan Hintze d/b/a Valley Insurance Agency, third party defendant,
Appellant.

**Filed June 20, 2016**
**Affirmed**
**Rodenberg, Judge**

Hennepin County District Court
File No. 27-CV-14-8346

Kristi K. Brownson, John F. Thomas, Brownson & Linnihan, PLLP, Minneapolis, Minnesota, (for respondent)

Rolf E. Sonnesyn, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, Minnesota, (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Rodenberg, Judge; and

Bratvold, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant insurance agent Nathan Hintze d/b/a Valley Insurance Agency (Hintze) appeals from a judgment entered after a jury verdict finding him negligent in an action concerning insurance coverage. Hintze argues that the district court erred in concluding that he and the insurer are estopped from asserting a mistake, in not including comparative-fault questions in the special verdict form, and in not including a causation question in the special verdict form. We affirm.

## FACTS

Noah Solomon, by his father and natural guardian, Tessema Solomon, initially sued Quoc D. Huynh after Noah was bitten by Huynh's dog. Huynh sought coverage for Solomon's claims under two policies of insurance issued by Respondent Selective Insurance Company of South Carolina (Selective), a homeowner's policy and an excess-liability (umbrella) policy. Both were acquired through Hintze, Selective's agent. Selective brought a declaratory-judgment action against Huynh and Solomon, claiming that Huynh was not entitled to coverage under either policy because Huynh made material misrepresentations on his insurance applications. In response to Selective's suit, Huynh asserted that Selective should be estopped from asserting a mistake on the policy because its agent, Hintze, incorrectly recorded Huynh's truthful answers to Hintze's questions. Huynh also brought a third-party complaint against Hintze, alleging negligence.

The issues on appeal concern the circumstances surrounding Huynh's insurance applications. Huynh applied for a homeowner's policy in April 2013 and for an umbrella

policy in June 2013. Huynh then owned an Akita dog. Selective does not issue liability insurance policies to applicants who own Akitas. Huynh never told Selective or Hintze about the dog when he applied for either policy. Hintze testified that, as part of the homeowner's application, he asked Huynh whether Huynh had any animals, and Huynh said "no." But Huynh testified that Hintze never asked him if he had any animals. Both applications as completed indicated that Huynh did not have any animals or exotic pets. Huynh acknowledged that, although he had opportunities to review them, he signed the applications without reading them.

The case was submitted to a jury, which returned the following answers to the special verdict questions:

1. Did Quoc Huynh truthfully provide the correct answers to questions asked by Nathan Hintze when applying for insurance? Yes.
2. Did Nathan Hintze record the answers incorrectly in the insurance applications without the knowledge or fault of Quoc Huynh? Yes.
3. Did Quoc Huynh sign the insurance applications without first having read them regardless of having the opportunity to do so? Yes.
4. Did Quoc Huynh misrepresent that he had no pets or animals when he applied for insurance? No.
5. Was Nathan Hintze negligent with respect to Quoc Huynh's insurance applications? Yes.

Hintze moved for judgment as a matter of law, or in the alternative, a new trial. On October 16, 2015, the district court denied Hintze's motion. It entered judgment on the verdict in favor of Huynh and Solomon, and ordered Selective to provide coverage to Huynh in Solomon's dog-bite suit.

Selective and Hintze appealed from the judgment. Selective later settled with Huynh and Solomon; Selective, Huynh, and Solomon then stipulated to dismissal of

3

Selective's appeal. The settling parties asserted that Hintze's appeal was moot because of the settlement, and informed this court that they would not be participating in Hintze's appeal. Hintze was not a party to the settlement. By special-term order dated March 23, 2016, we accepted jurisdiction, concluding that the collateral-consequences doctrine applies because Selective sought to use the underlying judgment in ongoing, independent arbitration proceedings.

## DECISION

Hintze challenges the district court's application of the estoppel rule in *Pomerenke v. Farmers Life Ins. Co.* to conclude that Selective must provide Huynh with coverage. 228 Minn. 256, 36 N.W.2d 703 (1949). "When reviewing a declaratory judgment action, we apply the clearly erroneous standard to factual findings . . . , and review the district court's determinations of law de novo . . . ." *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 615 (Minn. 2007) (citations omitted); *see also Skyline Vill. Park Ass'n v. Skyline Vill. L.P.*, 786 N.W.2d 304, 306 (Minn. App. 2010). "Review [of a special verdict] is particularly limited when the jury finding turns largely upon an assessment of the relative credibility of witnesses whose testimonial demeanor was observed only by the jury and the [district] court and the latter has approved the findings made." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 662-63 (Minn. 1999).

In *Pomerenke*, the Minnesota Supreme Court explained:

> Where an application for insurance is made out by an insurance agent in the course of his agency and the insured truthfully gives the agent the correct answers, but the agent records the answers in the application incorrectly without the fault, knowledge, or collusion of the insured, and the insured signs the application without first having read it—although he had the opportunity to do so—in reliance upon the good faith

4

of the agent, the insurance company is not relieved from liability on the policy, and the act of the agent in recording incorrect answers is deemed the act of the insurer and not that of the insured. The theory upon which this rule—which is the majority rule—rests is that the agent in making out the application acts for the insurer, and the insurer is therefore estopped to assert the mistake.

228 Minn. at 260-61, 36 N.W.2d at 706.[1] Plaintiff, the surviving husband in *Pomerenke*, sought to collect on his deceased wife's life-insurance policy. *Id.* at 258, 36 N.W.2d at 705. The defendant insurance company sought rescission of the policy, arguing that the plaintiff and his wife misrepresented her ongoing health problems in the policy application. *Id.* But the plaintiff testified that, over the course of five visits by the insurance agent, the plaintiff told the insurance agent about his wife's health problems, the agent never asked the application question about health problems, and the wife signed the application without reading it. *Id.* The supreme court concluded that the question of the agent's mistake concerning the incorrect answers on the application was appropriately given to the jury. *Id.* at 261, 36 N.W.2d at 706. The insurer is, under the *Pomerenke* rule, estopped to assert a mistake to deny coverage where the mistake originates with its agent.

Here, the jury found as a fact that Huynh truthfully provided correct answers to the questions asked by Hintze, and that Hintze "record[ed] the answers incorrectly." It therefore necessarily found as a fact that Hintze never asked the application question about pets. The jury also found as a fact that Huynh "signed the insurance applications without first having read them regardless of having the opportunity to do so." These facts

---

[1] As the supreme court noted, the rule was well-established before *Pomerenke*. 228 Minn. at 260-61, 36 N.W.2d at 706. For convenience, however, we refer to the principle of law as the "*Pomerenke* rule."

are similar to, but slightly different than, those in *Pomerenke*. *See id.* at 258, 36 N.W.2d at 705. The question here is whether the *Pomerenke* rule applies when the agent *does not ask* the relevant question, resulting in the insured not supplying the relevant information. We conclude that the *Pomerenke* rule applies.

The purpose of the *Pomerenke* rule is to protect insurance applicants who rely on an insurance agent's expertise in correctly and accurately filling out applications. *See Kansel v. Minn. Farmers' Mut. Fire Ins. Ass'n*, 31 Minn. 17, 21, 16 N.W. 430, 430 (1883) (explaining that the rule protects applicants who "regard [insurance salespeople] as agents of the companies in the matter of preparing and filling up these applications"); *see also PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Trust ex rel. BNC Nat'l Bank*, 782 F.3d 976, 981 (8th Cir. 2015) (noting that "the purpose of the *Pomerenke* rule is to protect an insured who relie[s] in good faith on the agent's completing the application correctly") (quotation omitted). The jury necessarily credited Huynh's testimony in finding as a fact that he "provide[d] the correct answers to questions asked by Hintze when applying for insurance." It also found that Hintze "record[ed] the answers incorrectly." Where, as here, an insurance applicant provides truthful answers to all questions asked of him by an insurance agent, the *Pomerenke* rule estops the insurer from denying coverage based on the agent's mistake.

Hintze argues that *Pomerenke* should be read narrowly because a case that it cites for its rule of law involved an applicant "fully and correctly" stating the facts to the agent. *See Kansel*, 31 Minn. at 23, 16 N.W. at 431-32. The Minnesota Supreme Court in *Kansel* held that "where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding

6

all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured." *Id.* at 21, 16 N.W. at 430. *Kansel* enunciates no rule of law requiring applicants to provide unsolicited information to agents. Where the agent does not ask a question but nevertheless provides a wrong answer to that question on the insurance application, the resulting mistake is that of the agent and "the insurer is therefore estopped to assert the mistake." *Pomerenke*, 228 Minn. at 261, 36 N.W.2d at 706.

The district court properly entered judgment for Huynh and Solomon based on the special-verdict answers and the *Pomerenke* rule.

Having concluded that the *Pomerenke* rule applies to these circumstances and estops the insurer from denying coverage, the issues of comparative fault and causation are unnecessary to resolve the declaratory-judgment action. Hintze argues that applying the *Pomerenke* rule here effectively results in strict liability for an insurance agent's error and eliminates any duty of care on the part of an insurance applicant. He instead advocates for some incorporation of both a comparative-fault and a causation analysis in the application of the *Pomerenke* rule. But importing comparative-fault questions would be antithetical to the purpose of the *Pomerenke* rule, which permits an insurance applicant to rely on the agent to correctly complete an application. *Kansel*, 31 Minn. at 21, 16 N.W. at 430. Public-policy arguments to modify existing law are within the purview of the Minnesota Supreme Court or the legislature, and not this court. *See Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987), *review denied* (Minn. Dec. 18, 1987). We therefore decline to adopt Hintze's proposed modification of the *Pomerenke* rule, as going beyond our role as an error-correcting court. *See Lake George*

7

*Park, L.L.C. v. IBM Mid-Am. Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998) ("This court, as an error correcting court, is without authority to change the law."), *review denied* (Minn. June 17, 1998).

Hintze also argues that the district court erred in including a negligence question, but not comparative-fault and causation questions in the special-verdict form. All three of those questions, however, exclusively concern Huynh's third-party negligence claim against Hintze, brought to recover from Hintze if Selective was not required to afford him coverage. Because Selective is required to provide coverage under the policies, and has in fact settled Solomon's claims against Huynh, there is no viable cause of action against Hintze for negligence in failing to secure coverage. Because the district court correctly concluded that Selective must provide coverage to Huynh, we do not reach the questions raised by Huynh's third-party negligence action against Hintze.

In sum, the district court correctly applied the *Pomerenke* rule to estop Selective from denying Huynh coverage based on the jury's special-verdict answers.

**Affirmed.**