VERA M. HANEFELD v. M. V. FAIRBROTHER AND OTHERS.[1]

May 11, 1934.

No. 29,887.

*Somsen, Dempsey & Flor,* for appellant.
*O. J. Finstad* and *Putnam & Carlson,* for respondents.

[1]Reported in 254 N. W. 821.

548

*STONE, Justice.*

The trial without a jury resulted in a decision for defendants. Plaintiff appeals from the judgment.

Plaintiff is the daughter of Ellison Mooers, late a respected and well to do citizen of Cottonwood county. Testate, he departed this life June 13, 1931, survived by Cora F. Mooers, his second wife. She followed him in death in 1932. The purpose of this action is to recover from the administrator of her estate and her heirs, the other defendants, the property of Mr. Mooers, deceased, which passed to her under his will. Plaintiff claims under contract.

The first Mrs. Mooers died in 1922. Within a year Mr. Mooers married Miss Cora Fairbrother. Shortly before the marriage plaintiff and her husband were invited to the Mooers home, and then the contract under which plaintiff claims is alleged to have been made. We take from the brief for appellant this statement of what occurred:

"The contemplated marriage was then discussed and it was stated by Mr. Mooers that he wanted the Hanefelds to understand how things were to be left; he said he was going to give Mrs. Hanefeld 'that quarter up there,' and some money at his death; 'the biggest sum of property he was going to leave to his wife, * * * Cora, as long as she was around for the use of it, and what was left of it, what she didn't use, was to go to his daughter, Vera.'

"He asked whether that was all right with us, and we all agreed to it. Miss Fairbrother said 'that was perfectly all right. She would do everything in her power to follow his plans.' "

A fortnight later Mr. Mooers and Miss Fairbrother married. They continued to live in the old home until Mr. Mooers' death in 1931. Plaintiff and her husband lived on a farm, rented from Mr. Mooers, adjoining his "home place." The relationship between the two families was intimate. Mr. Mooers had a deep and abiding affection for plaintiff. She was married at the age of 19 in 1911 and thereafter performed no services for her father aside from the attentions to be expected from a daughter, having her own home near by, reciprocating the affection of a fond parent. The father's marriage to Miss Fairbrother introduced no rift in the relations of the family.

About two years after their marriage, October 24, 1924, Mr. and Mrs. Mooers signed a memorandum reading as follows:

"All of my estate, both personal and real, that I, E. D. Mooers, give, devise and bequeath to my wife, Cora Fairbrother Mooers, shall upon the death of said Cora Fairbrother Mooers go to my daughter, Vera M. Hanefeld, said Vera M. Hanefeld to be the sole heir to said estate."

Indorsed on the document, found among Mr. Mooers' papers after his death, was this:

"All to Vera [plaintiff]. J. M. nothing."

The initials "J. M." refer to a man who had come into the home of Mr. Mooers as a boy and there had been reared to manhood. Mr. Mooers left a memorandum of the extent to which he had been benefactor to the young man. It stated that "the $20,000 and more that I put into his hands was all gone" and that "he has since treated me with the utmost ingratitude." The boy had never been adopted, and the record thus explains, if explanation be needed, why he did not get more by the will.

Mr. Mooers' will was executed September 24, 1927. It was carefully drawn, disposed of a considerable estate, and remained unchanged. To plaintiff was given the quarter section on which she had long resided and another 160 acres in Oklahoma, together with $15,000 in cash. A nephew, a sister, a grandson (Clarence D. Hanefeld, plaintiff's son), were each given legacies of $500. G. A. Hanefeld and Ellsworth Hanefeld were given $300 and $200, respectively. To Edith Robinson went a quarter section in Cottonwood county and $300 in cash. J. M. Mooers got a cash legacy of $200. To the testator's wife, Cora Fairbrother Mooers, was devised a life estate in the "home place," a half section farm, with remainder to plaintiff and her son, Clarence. Finally, all the residue and remainder of the estate, "both personal and real," was given "to my wife Cora Fairbrother Mooers in fee simple." Plaintiff's husband was one of the two executors who administered the estate.

The will was drawn by Mr. N. L. Glover, an attorney of Windom. He was one of the attesting witnesses. He was a witness

for defendant at the trial and testified at length concerning his conversation with Mr. Mooers, as a result of which the will was drawn and executed. That testimony went in over the objection of plaintiff, and its admission is assigned as error under 2 Mason Minn. St. 1927, § 9814. The claim is that the communications by Mr. Mooers to his attorney were privileged under that statute. The law is settled to the contrary.

"When the attorney is made a witness to *attest the execution* of a document (and not merely to draft it), there is no confidence contemplated, and therefore no privilege for the occasion when the attorney is called upon to fulfill the function thereby assumed. He cannot be an attesting witness and yet not attest." 5 Wigmore, Evidence (2 ed.) p. 63, § 2315; In re Estate of Wunsch, 177 Minn. 169, 225 N. W. 109.

That the draughtsman of a will becomes an attesting witness shows absence of desire on the client's part that his instructions, of which the will is the memorial, be kept in confidence. Hence, when the testator's death makes the will effective, the reason for the rule of privilege ceases and so also the privilege itself. But, after death of the testator, the privilege is gone, even though the attorney was not an attesting witness, at least in litigation between litigants all of whom claim under the testator. Anno. 64 A. L. R. 184, 185.

■ Error is also assigned because of the exclusion of plaintiff's exhibit "D," an unsigned paper found in the effects of Cora F. Mooers after her decease. Mr. P. G. Fullerton of Lawton, Oklahoma, was the person addressed. Apparently it was written in June, 1932, and refers to the then pending settlement of the Mooers' estate, and concludes with this:

"My daughter Vera will come to Okla. with me so we can look things over together as all of Mr. Mooers' property will go to her and she will carry on the business when I am gone."

The writing was that of Mrs. Mooers, was in pencil, and unsigned. There is nothing to indicate that it was complete—nothing to show that if incomplete the document if and when completed would not

have contained much more. Whether such additions, if any, would have qualified what was already written can only be a matter of conjecture. At best, the paper is no more evidence of contractual obligation than it is of mere plan or intention. Under these circumstances its exclusion was not error. In any event there was no prejudice.

■ The oral agreement upon which plaintiff claims, made just before the marriage of her father to Miss Fairbrother, was in contemplation of marriage, was for an interest in real estate, and so not enforceable because not in writing in compliance with the statute of frauds. 2 Mason Minn. St. 1927, §§ 8456-8460. The findings are that plaintiff gave no consideration for that contract. That would be unnecessary if consideration were otherwise present. Plaintiff has not established that she made partial performance, by way of services or otherwise, to entitle her now to a decree of specific performance, under the rule of such cases as Greenfield v. Peterson, 141 Minn. 475, 170 N. W. 696. The oral agreement is, at least, plainly vulnerable to the argument that it did not speak in terms of contractual obligation but only in those of mere intention. In fact, plaintiff's husband testified as though he were narrating, not the terms of a "contract" he had heard made, but rather the broad lines of "plans" he had heard announced. Any trier of the facts might well have taken that view. See In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424; Carlson v. Krantz, 172 Minn. 242, 214 N. W. 928, 54 A. L. R. 545.

■ There remains for consideration plaintiff's claim that the writing signed by Mr. and Mrs. Mooers October 24, 1924, is a contract, or at least sufficient evidence of a contract, to entitle her now to a recovery. We pass the doubt, which the instrument itself creates, whether it was signed with contractual intent by either husband or wife. We pass also any argument that the document was an attempted testamentary disposition of Mr. Mooers' property without the formality required by law and so void.

In whatever category we may put the writing of October 24, it was subject to change by the parties and revocation in toto by Mr. Mooers. Three years afterwards and four years before his death,

he made a will with provisions so inconsistent with the plan of 1924 that the latter is properly considered as abrogated. It was so held as fact below. The conclusion was based mainly on the will and Mr. Glover's testimony. (There was other testimony of declarations by Mr. Mooers well supporting that view.) The latter was that Mr. Mooers, in his instructions for drafting his will, had declared the intention to give the residue of his property "to his wife absolutely. She had earned it. She had worked hard." Mr. Mooers understood fully the nature of life estate and remainder, and he so devised the "home place" to his wife as life tenant, with remainder, not to plaintiff, but to plaintiff and her son, Clarence. All the residue was carefully given "in fee simple" to Mrs. Mooers. Whatever the ultimate disposition which Mr. Mooers may have hoped that his widow would make of the property so left her, his own complete, well-defined, and effective testamentary disposition must stand, as against any earlier mere manifestation of intention to dispose otherwise. Such intention was subject to change and its manifestation to revocation. Taking plaintiff's supposed contract at its best, it put no restriction upon the testator's power to dispose of his property as he chose. The will alone, buttressed by Mr. Glover's testimony, well supports the decision denying recovery.

To the extent that the written memorandum of October, 1924, related to real estate, as an agreement between husband and wife it is invalid under 2 Mason Minn. St. 1927, § 8621. But it was held in Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 A. S. R. 420, that in case such an agreement between husband and wife is executed and the husband devises real estate to his wife upon the faith thereof, that is, upon condition that she in turn devise it to designated relatives, she takes the property in trust *ex maleficio,* for the party or parties beneficially interested. A case somewhat similar is Mosloski v. Gamble, 191 Minn. 170, 253 N. W. 378. The argument for plaintiff that this case is within that rule simply does not fit the facts because of the proper decision below that the agreement, if any, between husband and wife was abrogated and the property in question willed to the wife by her husband with the intention to make that disposition absolute.

Affirmed.