HENRY J. LARSON v. EMMA DAHLSTROM AND OTHERS.
CHARLES W. HEIMANN, INTERVENER.
LINNEA LARSON, ADDITIONAL DEFENDANT.[1]

February 11, 1943.

No. 33,369.

[1]Reported in 8 N. W. (2d) 48.

*Kelly, Berglund & Johnson,* for appellants.
*Lauerman & Pfeiffer,* for respondents.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order denying the motion of defendants and intervener for a new trial, after trial by the court and

findings in favor of plaintiff, in an action to quiet title to 160 acres of farm land in Renville county.

On March 20, 1920, James and Anna Larson, the fee owners of the land in question, conveyed it to Edward L. Johnson and Alfred Johnson, taking back from the grantees a purchase money mortgage on the premises. Alfred Johnson conveyed his interest in the premises to Edward L. Johnson on March 1, 1924. In 1920, the Larsons, with their family, moved from the farm to Wayzata and later to Minneapolis. James Larson died on September 25, 1929, leaving as his sole heirs his wife, Anna, his son, Henry, the plaintiff here, five daughters, the defendants, and one Florence Conner, not a party to the action. Anna Larson became the sole owner of the purchase money mortgage on the premises after the death of her husband.

On June 29, 1933, Edward L. Johnson, in consideration of his release from personal liability on the mortgage, by warranty deed conveyed the premises to Anna Larson and Henry Larson as joint tenants. It is this conveyance which is under attack in these proceedings. The deed was prepared by O. A. Allen, a reputable attorney of Hector, Minnesota, who also acted as witness thereon.

Henry, as well as some of the daughters, lived with their parents on the farm before it was sold and also during the time they resided in Wayzata and Minneapolis. A friendly relationship apparently existed between all members of the family at all times.

In 1934, after the reconveyance of the land, Anna Larson, Henry, and Henry's wife, Linnea, moved back to the farm and continued to live there and work it, the income being divided equally between Henry and his mother. The mother and the other children frequently visited back and forth in Minneapolis and at the farm.

Anna Larson died March 30, 1941. Since her death, Henry has claimed exclusive ownership of the premises and has received all the income therefrom.

Shortly after the death of Anna Larson, Henry brought this action to quiet title to the land. The defendants interposed an answer contending that the deed of June 29, 1933, was obtained

by plaintiff by undue influence at a time when Anna Larson was of weak and unsound mind, and they seek for each of the six children of the Larsons an undivided one-sixth interest in the premises.

After the death of Anna Larson, Charles W. Heimann was appointed administrator of her estate and filed a complaint in intervention in the action, likewise attacking the conveyance of June 29, 1933, and seeking recovery of the land and rents and profits therefrom for the benefit of the estate and all the children.

On April 29, 1942, the trial court made findings in favor of plaintiff, holding that at the time of the conveyance Anna Larson was of sound mind and capable of transacting the business in question; that the conveyance was in conformity with her wishes; and that no undue influence was exercised upon her at the time.

Defendants and intervener subsequently presented a bill of exceptions, which was settled and allowed on July 23, 1942, by the court, and, based thereon, moved for an order vacating the decision and granting to defendants and intervener a new trial on the grounds generally that the court erred (1) in admitting the testimony of the attorney for Anna Larson as to conversations with her relative to the deed and as to her mental condition; and (2) in excluding the testimony of Esther Dahlstrom, one of the defendants, relative to statements made to her, or in her presence, by Anna Larson with reference to title to the land and her intentions relative thereto, and also relative to a will of hers claimed to have been executed in 1938.

On July 6, 1942, the trial court denied defendants' and intervener's motion, and from such order this appeal is taken.

■ At the outset it may be well to dispose of the point raised by respondent as to the record on the appeal. He contends that the bill of exceptions on which the motion for a new trial is based is insufficient to permit this court to pass on the questions raised by this appeal; that the complete testimony should have been incorporated in the record rather than only those portions thereof which related to the rulings on evidence here under attack.

In answer to this it may be said that appellants, in their bill of exceptions, have presented in detail the questions which they contend were ruled upon incorrectly by the trial court, the objections interposed thereto, and the offer of proof made in connection with each question. A sufficient number of offers and rulings is included in the bill of exceptions to enable this court to determine whether substantial error occurred and whether substantial prejudice resulted therefrom. Appellants' proposed bill of exceptions was served on counsel for respondent, and submitted to and settled and allowed by the trial court, as containing a full and complete written statement of the exceptions taken on the trial.

In view of Rule VIII(2) of this court (212 Minn. xli), and in view of this court's frequent suggestions to attorneys to eliminate unnecessary portions of the record, we hold that the bill of exceptions as settled and allowed by the trial court is sufficient for this court to determine the questions raised on this appeal.

■ The first question presented in appellants' assignments of error and here to be determined is whether an attorney who has been requested by his client to act as a witness to the execution of a deed may testify, after the death of such client, as to statements made by the client at the time of the transaction, or whether such statements are inadmissible as privileged communications. (Appellants' assignments of error, Nos. I and II.) This question has not been passed upon directly by this court, although it has ruled frequently that such testimony is admissible in cases involving the establishment of wills, and in at least two decisions, by implication, it has manifested that the doctrine should extend to instruments of conveyance such as the one here under attack.

The decisions holding such testimony admissible in will cases are numerous. In re Estate of Wunsch, 177 Minn. 169, 173, 225 N. W. 109, 110, sums up this rule as follows:

"The author to the annotations of In re Young's Estate in 17 L.R.A.(N.S.) 108, sums up the decisions thus:

" 'It may be laid down as a general rule of law, gathered from all the authorities, that, unless provided otherwise by statute, com-

munications by a client to the attorney who drafted his will in respect to that document, and all transactions occurring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications, in a suit between the testator's devisees and heirs at law, or other parties who all claim under him.'"

See also Coates v. Semper, 82 Minn. 460, 85 N. W. 217.

In the discussion of this doctrine in Hanefeld v. Fairbrother, 191 Minn. 547, 550, 254 N. W. 821, 822, which also related to the execution of a will, it is indicated that the doctrine was not limited to will contests alone, but was intended to include documents such as the conveyance here in question as well. Therein this court quoted with approval 5 Wigmore, Evidence (2 ed.) p. 63, § 2315, as follows:

"When the attorney is made a witness to *attest the execution of a document* (and not merely to draft it), there is no confidence contemplated, and therefore no privilege for the occasion when the attorney is called upon to fulfill the function thereby assumed. He cannot be an attesting witness and yet not attest."

Thill v. Freiermuth, 132 Minn. 242, 248, 156 N. W. 260, 262, was an action to set aside a deed that decedent had made to his son under circumstances similar in many details to those in the present case. By inference, at least, in that case this court indicated that the aforesaid rule which this court has applied to will cases should apply also to the deed there under attack. Therein the court stated:

"In view of another trial it may be noted that the defendant was restricted in his proof of knowledge within the possession of the old gentleman's attorney. In this connection Coates v. Semper, 82 Minn. 460, 85 N. W. 217, and In re Layman's Will, 40 Minn. 371, 42 N. W. 286, may be examined."

The basis for the rule is not limited necessarily solely to the theory that the admission of the testimony serves to protect the

estate, as is sometimes contended. Rather, it is also premised on the theory expressed in Hanefeld v. Fairbrother, 191 Minn. 547, 254 N. W. 821, *supra*, that, where an attorney is requested specifically to attest an instrument, no confidence is contemplated, and the maker of the instrument, by implication, waives the privilege which would otherwise bar a disclosure of his statements with reference thereto.

Based on the foregoing decisions and the authorities generally, we hold that the rule permitting such testimony is sound and not limited strictly to will contests, but applies with equal force to deeds under attack such as the one here in question. Accordingly, we hold that the trial court did not err in admitting the testimony of the attorney, O. A. Allen; that such testimony was clearly admissible; and, further, that as admissible evidence it was amply sufficient as a foundation to enable said attorney to express his opinion on the mental condition of said Anna Larson, his client, at the time she executed the deed.

■ With reference to rulings of the trial court excluding testimony relative to the declarations of decedent made to her daughter Esther Dahlstrom, one of the defendants, or made by decedent in the presence of said daughter, as covered by appellants' assignments of error Nos. III to XVII, appellants contend that such testimony was admissible under the "verbal act" rule to show the mental condition of decedent. Under the "verbal act" theory, an interested party may relate statements of a decedent made during the latter's lifetime to show mental condition. However, it is now a well established rule that, when an interested party seeks to testify to declarations of this kind, the statements sought to be shown under such theory may not relate to the particular issues involved in the litigation. Consequently the trial court would have been in error had evidence of this type been admitted here over objection under the "verbal act" theory.

This distinction, limited of course to interested parties, is clearly expressed in Scott v. Prudential Ins. Co. 207 Minn. 131, 135, 290 N. W. 431, 433, where the court stated:

"Anyway, we have discarded all notion that we have any right, by construction so strict as to be arbitrary rather than fair, to destroy or even limit the operation of a statute. Our task is by a fair and reasonable construction to accomplish its purpose—to make it work to the full extent intended by the legislature. [Cases cited.] That being our duty, any extension of the 'verbal act' doctrine in further derogation of the statute cannot be allowed. It permits evidence of conversations showing the mental condition of the speaker. But it does not in any case permit evidence of conversations showing an intention for the future and relative to the very transaction in issue. See Dougherty v. Garrick, 184 Minn. 436, 239 N. W. 153, 77 A. L. R. 1286, where many of our cases are reviewed and where it is emphasized that such statements are not admissible simply because they happen to be part of the *res gestae* and not hearsay. The statute explicitly bars them. That is enough."

An examination of appellants' assignments of error Nos. III, IV, V, VI, X, XI, XVI, and XVII indicates that appellants sought to elicit from the witness Esther Dahlstrom statements claimed to have been made to her by decedent during her lifetime with reference to her intended disposition of the property here in question, or indicative that plaintiff had exercised undue influence upon her at the time of the conveyance to plaintiff. Since these are the very questions in issue in this litigation, such evidence was clearly inadmissible, under the decision in the Scott case, even though offered to show the mental condition of decedent. To hold otherwise would permit an interested party to introduce without limit evidence of declarations of a decedent clearly barred by Minn. St. 1941, § 595.04 (Mason St. 1927 § 9817), simply by declaring that such evidence was offered to show mental condition and for no other purpose. The statute would thus become ineffective, and the protection it was intended to afford the property settlements of those whose lips are sealed by death would become a nullity.

■ Appellants' assignments of error Nos. VII, VIII, IX, XII,

XIII, XIV, and XV relate to declarations claimed to have been made by Anna Larson in 1938 and 1939 to the same witness or in her presence with reference to an alleged will made by decedent. The court rules out the questions seeking to elicit this evidence. An examination of the offers of proof made thereafter in connection therewith indicates only that the testimony was offered to establish facts relative to said will and its disappearance, rather than to show mental condition.

Since the testimony sought to be elicited involved matters directly barred by *Id.* § 595.04 (§ 9817), it was clearly inadmissible under said statute. In addition, the trial court properly might have excluded it on the additional theory that it was immaterial on the issue either of undue influence or mental incapacity, since it related to a period more than five years subsequent to the execution of the deed by decedent. Accordingly, we must hold that the trial court did not err in excluding the evidence covered by the assignments of error indicated. Since we cannot hold that there was error in the trial court's rulings on these questions, it follows that there was nothing in the record, as it appears before us, which would give the witness Esther Dahlstrom a basis for expressing her opinion as to decedent's mental condition. Therefore, we find no error in the court's refusal to permit said witness to express her opinion on this subject as covered by appellants' assignments of error Nos. XVIII and XIX. The admission of opinion evidence of lay witnesses on mental condition in any event is substantially a matter of discretion for the trial court. Walso v. Latterner, 143 Minn. 364, 173 N. W. 711.

Appellants' assignment of error No. XX recites that the court erred in denying the motion of defendants and intervener for a new trial. No specific grounds are set forth to support such claims of error, and hence there is nothing in such assignment that can be considered by the court on the record here presented. 1 Dunnell, Dig. & Supp. § 360.

Affirmed.