IN RE ESTATE OF HILDA EKLUND, ALSO KNOWN AS
HILDA PETERSON.
ROGER EKLUND v. OSCAR W. EKLUND.[1]

April 6, 1951.

No. 35,436.

[1]Reported in 47 N. W. (2d) 422.

520

*Lathers & Hoag,* for appellant.
*Eckman & Eckman,* for respondent.

MATSON, JUSTICE.

Appeal from a judgment of district court affirming a final decree of distribution entered by the probate court of St. Louis county.

In affirming the probate court's final decree of distribution which awarded decedent's entire estate to her surviving son, Oscar W. Eklund, the district court found that decedent had *intentionally, and not by accident or mistake,* made no provision in her will for Roger Eklund, the adopted child of another son, Robert Eklund, who had predeceased her. (See, M. S. A. 525.201.) In 1929, decedent's two sons, Oscar and Robert, were both living and married, the former in Duluth and the latter in Chicago. A grandson, Robert Lincoln, had been born of Oscar's marriage. Son Robert had no issue by his marriage, but in 1930 he and his wife adopted a son, Roger Eklund, the appellant herein. In 1932, Robert moved with his wife and adopted son to Duluth, where he lived until he died on January 26, 1934. On March 20, 1934, decedent made her will whereby she bequeathed her entire estate, consisting of her homestead, to her surviving son, Oscar, as the sole legatee, and, if he should not survive her, then to her grandson, Robert Lincoln. Her will neither provided for nor mentioned her adopted grandson, Roger.

Ruth Eklund, the wife of the sole legatee, Oscar, over the objection of appellant, was permitted to testify to a conversation she had with the decedent in March 1930, immediately after the latter had returned from a visit to Chicago, where she learned for the first time that Roger was only a son by adoption. Ruth said that decedent was very much disturbed because Roger, contrary to what she had theretofore been led to believe, was not her true grandson but

only such by adoption. Ruth also testified that decedent had in substance stated that she had made the will as written because she wished to disinherit her adopted grandson by giving everything to her son Oscar.

M. S. A. 595.04 in part provides:

"It shall not be competent for any party to an action, *or any person interested in the event thereof,* to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, * * *." (Italics supplied.)

■ Pursuant to § 595.04, a wife of a party to an action, by virtue of her inchoate statutory interest in the lands of her husband, is a person interested in the event of the action and is not competent to give evidence of or concerning any conversation with a decedent relative to any matter at issue between the parties with respect to such lands. Cocker v. Cocker, 215 Minn. 565, 10 N. W. (2d) 734; see, Larson v. Dahlstrom, 214 Minn. 304, 8 N. W. (2d) 48, 146 A. L. R. 245. In recognition of the above rule, the trial court by its memorandum indicated that in making its findings it had wholly disregarded Ruth's testimony as to her conversations with the decedent *insofar as such conversations gave literal expression or direct utterance of decedent's intent upon the issue of why the adopted grandson had been omitted from her will.*

■ The trial court, however, held that, under In re Estate of Mumm, 177 Minn. 226, 225 N. W. 102, the conversations between Ruth and decedent, insofar as they gave expression to decedent's grave disappointment on learning that Roger was an adopted child, were admissible as constituting *verbal acts* of decedent which reflected her state of mind at the time Roger was adopted, as well as for some years prior to the execution of the will. This was error. The verbal acts rule of the Mumm case permits an interested party or person to give the conversations with a person since deceased *for the sole and limited purpose of laying a foundation for the giving of an opinion as to whether the decedent was mentally compe-*

*tent.* In other words, the exception is not for the purpose of laying a foundation for the drawing of inferences as to decedent's mental attitude or condition generally, but only to show decedent's mental condition as to insanity or mental weakness. In re Estate of Mumm, *supra;* see, Annotation, 146 A. L. R. 250, 256. Clearly, the verbal acts doctrine, as an exception to § 595.04, does not permit a party or an interested person to give conversations with a decedent as a basis for the drawing of an inference as to decedent's actual intent on the theory that the conversations reveal that decedent's mental attitude was one of hostility or prejudice toward a certain person or subject. The laying of a foundation for the expression of an opinion as to mental capacity has nothing to do with decedent's actual intent. If the verbal acts doctrine were to be thus extended, the purpose of § 595.04 would be nullified by permitting conversations with a decedent to be used as a basis for showing decedent's actual intent relative to the very transaction in issue.

■ Again we must emphasize that § 595.04 is to be given a fair and reasonable construction to accomplish its purpose—*to make it work to the full extent intended by the legislature.* Pomerenke v. Farmers L. Ins. Co. 228 Minn. 256, 36 N. W. (2d) 703. In recognition of the legislative intent, we have heretofore specifically held that testimony as to conversations with a person since deceased which is incompetent under § 595.04 is not rendered competent or admissible in evidence by the fact that it is a part of the *res gestae,* or on the theory that it constitutes a verbal act from which the decedent's actual intent may be inferred. Dougherty v. Garrick, 184 Minn. 436, 239 N. W. 153, 77 A. L. R. 1286; Scott v. Prudential Ins. Co. 207 Minn. 131, 290 N. W. 431; Larson v. Dahlstrom, 214 Minn. 304, 8 N. W. (2d) 48, 146 A. L. R. 245, with Annotation at 250.

The judgment below is reversed and a new trial is granted.

Reversed.