HARRY CALDIS AND OTHERS v. CURTIS HOTEL COMPANY AND ANOTHER.

95 N. W. (2d) 641.

March 20, 1959—No. 37,521.

*Curry & Peterson* and *Sheldon J. Curry,* for appellants.

*Cant, Taylor, Haverstock, Beardsley & Gray* and *Franklin D. Gray,* for respondent Curtis Hotel Company.

*Robert P. Schwinn,* for respondent Phillips.

Thomas Gallagher, Justice.

Action for damages and for the cancellation of a promissory note in the sum of $15,000 made by plaintiffs Harry Caldis and George Caldis to defendant Nicholas B. Phillips, and guaranteed by plaintiff Sam Caldis, now deceased, because of alleged misrepresentations by defendants in the sale to plaintiffs Harry Caldis and George Caldis of a restaurant known as the Poppy Shop located in the basement of the Curtis Hotel in Minneapolis.

The sales agreement made by Nicholas B. Phillips, as owner of the business and lease thereon, and Harry Caldis and George Caldis, as purchasers, included the leasehold interest, the stock, supplies, fixtures, and good will thereof. The note described was made and delivered to Phillips as part of the purchase price.

The misrepresentation claims relate to whether defendants advised plaintiffs of the intention of defendant Curtis Hotel Company, owner of the leased premises, to construct and operate another coffee shop or restaurant in its hotel. Curtis Hotel Company is alleged to have represented to plaintiffs, through its agents, that it had no plans to operate or construct such a restaurant in the hotel and thereby to have induced plaintiffs to make the purchase described and to issue and guarantee the note in question. Subsequent to the sale, Curtis Hotel

Company did install and commence the operation of its own coffee shop on the first floor of its hotel property. Defendants submitted evidence to establish that plaintiffs had not been misled in purchasing the property; that they had actual and constructive knowledge before such purchase that Curtis Hotel Company then planned to open and operate a coffee shop on the first floor of the property.

In the course of the trial plaintiffs sought to introduce in evidence certain conversations which had taken place between plaintiffs and defendants at which plaintiff Sam Caldis was present. The latter had died subsequent to the transaction. This testimony was sought to be elicited from Harry and George Caldis. The trial court struck all testimony with reference to such conversations and sustained objections thereto under the provisions of M. S. A. 595.04 that:

"It shall not be competent for *any* party to an action, or *any* person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, * * *." (Italics supplied.)

Since Sam Caldis was present at all conversations during the negotiations, the effect of this ruling was to exclude all evidence of misrepresentation. Accordingly, the trial court directed a verdict in favor of defendants and made findings and ordered judgment in their favor. This is an appeal from its order denying plaintiffs' subsequent motion for a new trial.

■ On appeal the sole question presented is whether the trial court erred in applying the provisions of § 595.04 in rejecting testimony relative to conversations between the parties at which Sam Caldis, since deceased, had been present. It is the contention of plaintiffs that the purpose of this statute is to prevent a witness from testifying to fabricated facts where, because of the death of his adversary, no one survives who might contradict such fabrications, and that in such situations as presented here, where witnesses to or participants in such conversations from both sides of the controversy survive who may contradict any fabrications submitted, the reason for the statute disappears and the conversations should be admissible. In support of this contention they

cite Ehmke v. Hill, 236 Minn. 60, 51 N. W. (2d) 811, in which this court permitted testimony as to conversations between surviving witnesses and a decedent. In that case, however, the testimony of the witnesses received in evidence was held admissible, notwithstanding § 595.04, on the ground that in relating such conversations they were testifying adversely to their own interests in certain real property involved in the litigation which otherwise would descend to them. The exception defined was made solely on this ground.

■ We cannot escape the conclusion that since the language of § 595.04 is plain and unambiguous it must be applied to the situation here presented. Its definite provision that it "shall not be competent for *any* party to an action * * * to give evidence therein of or concerning *any* conversation with * * * a deceased * * * party * * * relative to any matter at issue * * *" (italics supplied) gives no leeway to this court as to its application. In construing its provisions, Mr. Justice Mitchell in Kells v. Webster, 71 Minn. 276, 281, 73 N. W. 962, 964, stated:

"* * * so far from being cut down or evaded by construction, [the statute] ought to be favored and liberally construed, so as to effect the purpose of its enactment."

In defining what was intended by liberal construction, this court stated further in Pomerenke v. Farmers Life Ins. Co. 228 Minn. 256, 263, 36 N. W. (2d) 703, 707:

"There should be no confusion about what is meant by a liberal construction or a fair and reasonable construction to accomplish the purpose of the statute. It simply means that *the intent of the legislature is to be given full sway, even though the statute establishes a strict rule of evidence which without qualification excludes otherwise competent evidence of the conversations of persons since deceased.* In other words, a liberal statutory construction may produce a statutory rule of evidence that is strict and of which judges and text writers may disapprove, but their disapproval gives no justification for disobeying the statute * * *." (Italics supplied.)

See, also, Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N. W. (2d) 707.

Because of the very definite language of the statute and our previous construction thereof, we conclude that the trial court was correct in

applying its provisions here. If this statute, designed to protect the interests and commitments of those whose lips are sealed by death, is too harsh or restrictive, the legislature is the proper tribunal for relief. We cannot give it a meaning which its clear terms do not convey.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.