PATRICIA ENGEL v. ROLAND M. STARRY AND ANOTHER.

128 N. W. (2d) 874.

May 22, 1964—No. 39,064.

*William E. Crowder,* for relator.
*Scholle, Schweiger & Kalina,* for respondents.

FRANK T. GALLAGHER, C.

Certiorari to review a decision of the Industrial Commission denying death benefits to the dependents of a deceased former employee of a construction firm owned by Roland M. Starry, hereinafter referred to as respondent. The employee's widow, referred to as relator, based her claim on employment-related suicide. Minn. St. 176.021, subd. 1.

The death of Richard Engel occurred the evening of December 18, 1957, in his trailer home situated about 50 feet behind the home of his wife's parents, Mr. and Mrs. Earl Eldred, in Todd County. Relator testified that she and her husband planned to play cards with her parents on the evening of his death. Her mother, Mrs. Eldred, testified that Engel called to her that evening while they were standing in their respective doorways and said, "Ma, I will be over in about 20 minutes and beat you with cards."

Relator said that the last time she saw her husband alive was about 6:30 that evening, "A few minutes, just a couple of minutes," before his death. He was then lying on a couch in the trailer with his eyes closed. She left the trailer to go the 50 feet to her parents' house but did not observe him making any preparations to clean his guns. He was to follow her later with the baby who was sleeping. One reason

for Mrs. Engel's leaving the trailer was that her mother called over and told her that her other child, who was with her mother, "was fussing" and "wanted to come home." The witness said that she talked with her mother "a couple of minutes" and was going to take her boy home when she heard a sound "like a book closing" and noticed the silhouette of her husband on the curtain falling forward and down. She ran to him, and when she entered the trailer, "[h]e was laying half on the floor and half on the couch." She was asked, "What did you do then?" and she answered, "I naturally knew he had shot himself. I saw the gun there and I picked him up by the shoulders to hold him to see where he had been hit." The witness also said that the bullet entered under his chin, that he never regained consciousness, and that he died before he talked with anyone.

Relator observed a gun—a .22 automatic—in the immediate vicinity of her husband's body. A half hour later, she said, she noticed he had some large red shells and a few .22 shells on the dresser beside the couch, but she did not notice any other guns or shells. A conflict in testimony later developed over the presence or absence of another gun—a 12-gauge shotgun—and various tools for cleaning guns. Although relator remembered seeing only the .22, other witnesses for relator testified to the presence of the shotgun. Donald Eldred, her brother, testified to seeing both guns and two used cleaning patches.

On October 20, 1954, some 3 years before his death, Engel suffered substantial injuries to his skull and face when he was employed as a mechanic and truckdriver for respondent. While Engel was working on a dump truck, the truck body came down and crushed his head between the body and the truck frame. He sustained a severely lacerated forehead with a fractured nose; vision of his right eye was limited to distinguishing light from dark; and he suffered a fractured jaw and shock. After emergency treatment by a doctor at the Sauk Centre Hospital, he was transferred to the St. Cloud Hospital under the care of other doctors, where he remained until November 5, 1954, when he returned home. While in the St. Cloud Hospital, he underwent surgery to reduce the fracture of the upper jaw and treatments that brought the nose forward to a more normal position. Surgery on the right eye

apparently corrected a spreading of the eye socket itself and raised the inner corner of the right eye to a more normal position. After another series of operations, Engel still had double vision, a structural malalignment of his eyes, and constant tearing from one eye due to the destruction of a tear duct.

Relator's claim rests upon her contention that her husband's death was caused by an irresistible impulse to commit suicide, which in turn was the result of the 1954 accident. This claim was supported by evidence showing a continuing and painful physical decline and consequent mental disturbance; evidence of the circumstances immediately prior to his death; and opinion evidence by medical testimony.

Mrs. Engel testified that her husband, although outwardly calm and strongly self-disciplined to his friends, coworkers, and relatives, continually complained to her of pain in his head and arms. She said that before his death he began to scream at night; that his arm needed to be massaged to work out a paralysis; and that a mental decline was shown by withdrawing from her physically. Two weeks before his death, after a social evening, she said that he drove very fast toward a bridge abutment until she grabbed the wheel. Also, that a week before his death he burned all his papers, and, finally, the Monday before his death, he threw his child across the trailer living room and then burst into tears.

She also testified that if her husband was cleaning guns at the time of his death he substantially deviated from his customary pattern of using caution for the protection of himself and his family. She stated that he had carefully cleaned the guns the week before. The factual basis of her claim that he did not intend to clean the guns is that the cleaning tools and the guns were not out when she left the trailer shortly before he was found dead.

The referee found that the death was accidental and not causally related to the personal injury of October 20, 1954. On relator's appeal to the commission, the findings and decision of the referee were affirmed, with one dissent.

The questions which we consider pertinent on review are: (1) Whether the finding of the commission is supported by competent evi-

dence in the record; (2) whether admission of the death certificate at the hearing before the referee was prejudicial to relator because admitted to establish the cause of the death; (3) whether lack of a full cross-examination of the coroner, who prepared the death certificate, was prejudicial to the relator because the basis of his opinion was thereby concealed; and (4) whether exclusion of a declaration of Engel was error prejudicial to relator because testimony of substantial weight was thereby excluded.

■ It is a close question as to whether Engel's death was accidental or whether he committed suicide. We have repeatedly said that it is the policy of this court in reviewing the findings of the Industrial Commission not to determine whether on the facts the decision of the commission is correct or even preferable to another but rather only to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. Anderson v. Armour & Co. 257 Minn. 281, 287, 101 N. W. (2d) 435, 439, and cases cited.

In the record before the court, sufficient competent evidence appears to sustain the findings of the commission. There is evidence to show that before the 1954 accident Engel was a quiet, home-loving person who liked people and was respected for his industry and ability. Testimony was introduced showing that following his accident he adjusted to his new condition. Mrs. Engel said that he returned to his employment for a short time in about April 1955, doing the same type of work, and that subsequently he changed his employment to Johnson Brothers Construction where "[h]e got a better position as a more advanced mechanic." A fellow worker stated Engel never complained and was a good worker. His employer, the season before his death, testified that Engel was a good worker, was not handicapped by his eye, and was to be rehired in the spring.

Mrs. Engel's father testified that Engel was jovial and friendly throughout his life, both before and after the accident. Her mother stated that although Engel quit "teasing" her after his accident and kept things to himself, she noticed little change in his attitude. Some brothers and a sister of Mrs. Engel testified they noticed no behavior changes or moods of depression in Engel following the accident. While

Mrs. Engel attempted to impeach this testimony by stating that her relatives feared attaching the memory of suicide to her family, the commission, in accepting this testimony, was acting within its authority as trier of fact.

The conduct of Engel immediately prior to his death rebuts any long-term plan to end his life by a particular date. His father-in-law testified that Engel had been fishing with him on the day of his death and that his general attitude and conduct seemed to be the same as it had been for some months before except that "his eye bothered him; he kept cleaning it." It appears from the witness that decedent was also considering getting a new truck about that time.

The circumstances of Mr. Engel's death raise two possible inferences—(a) that he was the victim of an irresistible impulse and committed suicide, or (b) that he was accidentally killed while cleaning his guns. While the record discloses a conflict in the testimony about the condition of the living room at the time of Engel's death, the commission did not abuse its discretion as trier of fact by accepting the testimony establishing the presence of another gun, a cleaning rod, and two used patches.

Following an extensive statement of the injuries suffered by Engel on October 20, 1954, and the continuing surgical treatment for them, the referee heard the opinions of two qualified doctors, Dr. Andrew Leemhuis and Dr. Robert P. Jeub, as to the causal connection between the head injury and the death of Engel. Dr. Jeub testified that he was of the opinion that the decedent had surrendered himself to an irresistible impulse to commit suicide. He based this opinion on the fact that the injuries, which were substantial and conspicuous and also impaired his vision, were sufficient to disturb a normal person mentally. Dr. Leemhuis testified that he believed the two events were unconnected. He said that the patient had become more sober following the accident; that any depression was a normal reaction to a head injury and the attendant financial loss; that any signs of depression observed by his wife were consciously controlled in public and accordingly it was not a neurotic or psychotic deep depression.

We have here a conflict which often occurs between doctors and

psychiatrists in connection with their testimony. Dr. Jeub, a witness for the relator, was of the opinion that the decedent committed suicide and that the act was a consequence of the employment injury suffered in 1954. Dr. Leemhuis, for the respondent, said that on the evidence presented to him he did not see that there was any connection between the 1954 accident and Engel's death in December 1957. This conflicting evidence presented a fact question for the commission to determine, and, having decided it adversely to the relator, it cannot be disturbed on review where there is reasonable evidence to sustain it. Nelson v. Creamery Package Mfg. Co. 215 Minn. 25, 9 N. W. (2d) 320. The triers of fact in workmen's compensation proceedings must choose not only between conflicting evidence but also between opposed inferences. Hill v. Umbehocker, 201 Minn. 569, 277 N. W. 9.

The first of the evidentiary questions involves the admission of the death certificate prepared by the county coroner, Dr. M. E. Mosby. This certificate stated the death was accidental and occurred when Engel "[w]as cleaning his guns when a loaded .22 Caliber rifle discharged and bullet entered his head." Timely objection to its admission was made. The relator contends the admission of this certificate is reversible error because the statements of causation here have prejudiced the trier of fact in the findings.

The statute expressly provides that the commission findings must be based upon competent evidence. Minn. St. 176.411, subd. 1. We have held that a decision by the Industrial Commission will be affirmed upon a showing of competent evidence sufficient to support its conclusion although some incompetent evidence had been admitted. Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4. The problem then is the extent to which incompetent evidence figured in the development of the commission's findings. See, 2 Larson, Workmen's Compensation Law, § 79.10.

In civil litigation we have said that statements in a death certificate as to the manner in which death was brought about are inadmissible for the reason that they constitute hearsay and opinion evidence. Backstrom v. New York Life Ins. Co. 183 Minn. 384, 236 N. W. 708. In that case we held that it was error to admit a death certificate

stating that the cause of death was "suicide by firearm" for the reason that the word "suicide" is a conclusion and hearsay as to the manner in which the death was brought about.

Such certificate is admissible as prima facie evidence of the facts showing the immediate cause of death,[1] but the manner in which the cause of death is brought about, that is, by accident, suicide, or homicide, is not admissible for the reason that they constitute conclusions, not facts. Backstrom v. New York Life Ins. Co. *supra.* In this case the same is true, and the commission was not bound to accept the conclusion that death was accidental from the death certificate. See, 12 Schneider, Workmen's Compensation, § 2533, p. 325.

In the record before us, the relator does not appear to have been prejudiced. At the time of the admission of this certificate, the referee acknowledged the issue he was to decide, namely, the cause of death. Thus, the certificate failed to prejudice the reasoning of the referee. On appeal, the majority of the commission, while stating the certificate was properly admitted, went on to conclude that the record contained evidence sufficient for a finding that the death was accidental, while expressly excluding the certificate from consideration. We need not reach the question whether the certificate should have been excluded, since the commission reached its conclusion on competent evidence without reference to the certificate. It is our opinion, under the record here, that the admission of the death certificate was not prejudicial to the relator.

■ The next question also involves the testimony of the coroner, and the same problem of the effect of admission of arguably incompetent evidence. Dr. Mosby testified to his observations in the trailer following the death and to the comments made to him by the family at that time. Upon cross-examination, however, he refused to answer hypothetical questions, involving expert medical opinion, based on the events prior to the death. Such a line of questioning would have covered matters within the scope of his duties of investigation as a cor-

---

[1]Minn. St. 144.167 provides that death certificates filed within 6 months after the time prescribed therefor shall be prima facie evidence of the facts stated therein.

oner in preparing a death certificate. The inquiries were proper,[2] and in view of the refusal of the witness to submit to full cross-examination his expert testimony should have been stricken. Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30; Randall v. Goodrich-Gamble Co. 244 Minn. 401, 70 N. W. (2d) 261; 7 Dunnell, Dig. (3 ed.) § 3342; 5 Wigmore, Evidence, § 1391.

The majority opinion of the commission concluded, as we have, that Dr. Mosby should have been required to answer the questions propounded to him. The commission ultimately excluded the testimony of the coroner from its final conclusion and thereby removed any incompetent testimony in the record from its findings, and its decision must be affirmed, based as it is upon competent evidence.

■ The final consideration here involves a particular comment of Engel to his wife. Although counsel for relator recognizes in his brief that conversations with the deceased person by a party in interest are inadmissible, he contends that the statement offered in the instant case was admissible under an exception to the rule. It appears from the record that about 2 weeks before his death Engel and his wife attended a dance. She said that he was very quiet that evening and associated with only a few persons. As they approached a bridge on their way home he was going over the speed limit, and she asked him to slow down. Instead of doing so, she said he went faster, pulled over toward the outside of the lane, and said, "Well, we might just as well end it here together." Respondent objected to any conversation and asked that it be stricken from the record and the referee so ordered. Relator argues that the comment of the deceased was admissible as circumstantial evidence of the condition of his mind.

It is apparent to us that the evidentiary value of this evidence was not to establish the facts asserted in the remark itself, but to show

[2]There was no medical privilege present here once the death certificate was admitted because the certificate publicly stated the physician's opinion on the cause of the death of Engel. The doctor-patient privilege, developed to encourage disclosure of information and facts by a patient to his doctor, has no function here. See, 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2385(a).

the condition of Engel's mind when the comment was made. Because a remark such as this is free of one of the defects of hearsay testimony, which is .the impossibility of testing the truthfulness of the out-of-court declarant, a remark such as this is ordinarily admissible as an exception to the hearsay rule. In re Estate of Eklund, 233 Minn. 519, 522, 47 N. W. (2d) 422, 424; 6 Wigmore, Evidence (3 ed.) § 1790. See, also, 2 Wigmore, op. cit. § 228.

In the instant case, however, the statement was offered after death by an interested party, the wife, on a primary issue, the mental state of her husband, and the so-called Dead Man's Statute, Minn. St. 595.04, excludes conversations with a deceased person offered by an interested party relative to any matter at issue. It can be argued forcefully that this conversation is a verbal act, proving a state of mind, and therefore an exception to the hearsay rule. However, the above statute has been construed in Minnesota to exclude remarks by a deceased party ordinarily admissible as exceptions to the hearsay rule. Dougherty v. Garrick, 184 Minn. 436, 239 N. W. 153, 77 A. L. R. 1286; In re Estate of Eklund, *supra*; 20 Dunnell, Dig. (3 ed.) § 10316. Furthermore, the statute has been applied consistently to proceedings, such as the instant one, arising under the Workmen's Compensation Act. State ex rel. Rinker v. District Court, 142 Minn. 420, 172 N. W. 311; Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 585, 282 N. W. 801, 805. Accordingly, the referee properly excluded this statement by deceased. This is quite restrictive, but the legislature is the proper tribunal for relief. Caldis v. Curtis Hotel Co. 255 Minn. 98, 95 N. W. (2d) 641.

Although the statement of Engel was excluded, the acts of the decedent and the comments of his wife when the incident at the bridge occurred did enter the record. Each opinion of the commission, majority and dissent, analyzes the incident as evidence of Engel's mental condition immediately prior to his death. Thus, under the facts and circumstances here, we cannot say that relator's claim was prejudiced as a result of the application of the Dead Man's Statute.

We have considered the other grounds raised by relator and found. them without merit.

From the above it follows that the decision of the Industrial Commission is to be affirmed.

Affirmed.