222 N.W.2d 92 (1974)
In re ESTATE of Herbert W. LEA, Decedent.
WINONA NATIONAL AND SAVINGS BANK, Executor of the Estate of Herbert W. Lea, Deceased, proponent, Appellant,
v.
Frank A. SHEEHAN, Jr., contestant, Respondent.
No. 43981.
Supreme Court of Minnesota.
September 20, 1974.
*94 Briggs & Morgan, Leonard J. Keyes, and John R. Kenefick, St. Paul, for appellant.
Peterson, Delano & Thompson, Winona, Gray, Plant, Mooty & Anderson, Robert L. Helland, and Richard A. Bowman, Minneapolis, for respondent.
Heard before KNUTSON, C.J., and KELLY, MacLAUGHLIN, and MULALLY, JJ., and considered and decided by the court en banc.
EDWARD D. MULALLY, Justice.[*]
This is an appeal from an order denying a new trial in a will contest. The trial court found that the testator did not have sufficient testamentary capacity to execute a valid will. We affirm.
Testator, Herbert W. Lea, was born in 1878 and died in 1969 at the age of 91. He lived all of his life in and about Winona, Minnesota. By order dated January 16, 1970, the probate court of Winona County admitted to probate his will dated September 30, 1960. Winona National and Savings Bank was appointed executor by the same order.
A nephew, Frank A. Sheehan, Jr., (hereinafter referred to as Frank) appealed to the district court from that portion of the order admitting the will to probate. Frank and his brother, John M. Sheehan, also commenced an action in district court requesting specific performance of a contract to make a will and an adjudication that they were the rightful owners of half of testator's estate. Defendants in that action were Winona National and Savings Bank and four of the beneficiaries under the will that had been admitted to probate. The two actions were consolidated for trial.
The trial court made findings of fact, conclusions of law, and order for judgment in which it concluded that on September 30, 1960, testator lacked testamentary capacity and that the will bearing that date was not valid and not entitled to probate. The court further concluded that testator had not entered into a contract to leave any portion of his estate to Frank and John Sheehan.
Winona National and Savings Bank, as executor, appealed to this court from the order of the trial court denying its motion for a new trial. Frank and John Sheehan appealed the court's ruling in their specific performance action. The latter appeal was subsequently dismissed in this court.
At the time of his death, testator's gross estate amounted to $692,000 and was comprised entirely of personal property. He had never married. Testator's closest relatives were a sister, Beulah Sheehan, who predeceased him, and a brother, Fred P. Lea, who survived him. He was also survived by nephews, Frank and John Sheehan, sons of Beulah, and Herbert F. Lea and Patricia Lea Hicks, children of Fred Lea. Certain other nephews and nieces were not named in the will and are not parties to these proceedings.
Between 1942 and September 30, 1960, testator executed a total of 15 wills and 2 codicils. In all, except the September 30, 1960, will, testator's sister, Beulah, and his brother, Fred, each received comparatively equal outright bequests or amounts placed in trust for their benefit; they equally divided the residue of the estate; and upon their death their shares were to be divided equally among their respective children. This division of the remainder continued until the September 8, 1958, will which gave *95 two-thirds to John Sheehan and one-third to Frank. This unequal treatment of the remainder was carried forward in the will dated January 8, 1960. The will of September 30, 1960, made no bequests outright to either Beulah or Fred; the residue of Lea's estate was to be divided into a one-sixth trust for Beulah and a five-sixths trust for Fred; the remainder on Beulah's death was to go to John Sheehan; and the remainder on Fred's death was to be divided in thirds between his wife, his daughter, and son.
The will in dispute was executed on September 30, 1960, in the presence of Harold J. Libera, the attorney who had drafted the will, and Libera's wife, Rosemary. Libera had drafted and witnessed for Lea the two wills which immediately preceded this one.
Lea was 82 at the time of the execution of this will. On March 13, 1961, he voluntarily placed himself under guardianship. In 1964 or 1965, he left his home and was finally placed in St. Anne Hospice, where he died on July 29, 1969.
1. The ultimate issue in this matter is whether or not Herbert W. Lea had the requisite testamentary capacity at the time he executed the will dated September 30, 1960. During the trial there was considerable testimony by both lay and expert witnesses as to testator's testamentary capacity at that time. Frank was a witness in his own behalf and, over the objection of appellant, was permitted to testify as to conversations he had with testator. Ostensibly, such testimony was offered and admitted in the will contest as foundation for Frank's opinion as to testator's testamentary capacity on September 30, 1960. Appellant objected on the basis of the so-called Dead Man's Statute, Minn.St. 595.04,[1] and contends that in determining the issue of testamentary capacity, the trial court, while disclaiming the use of this testimony except as foundation, erred in that it in fact, in violation of the statute, based its conclusions of law on findings of fact that gave substantive effect to or used as direct evidence of testamentary capacity the testimony of Frank relating to conversations between himself and testator.
It is clear since In re Estate of Eklund, 233 Minn. 519, 521, 47 N.W.2d 422, 424 (1951), that in a will contest a party or person interested in the event thereof may testify as to conversations with a person since deceased "for the sole and limited purpose of laying a foundation for the giving of an opinion as to whether the decedent was mentally competent. In other words, the exception is not for the purpose of laying a foundation for the drawing of inferences as to decedent's mental attitude or condition generally, but only to show decedent's mental condition as to insanity or mental weakness."
In recent years, dead man's statutes have been the subject of severe criticism. 2 Wigmore, Evidence (3 ed.) § 578; Morgan, Some Problems of Proof Under the Anglo-American System of Litigation, p. 187; McCormick, Law of Evidence (2 ed.), § 65; Ladd, Admission of Evidence Against Estates of Deceased Persons, 19 Iowa L.Rev. 521; Maguire, WitnessesSuppression of Testimony by Reason of Death, 6 Am.U.L.Rev. 1; Harper, The "Dead Man" Rule, 6 Mercer L.Rev. 249; A.L.I., Model Code of Evidence, Rule 101; Uniform Rules of Evidence, Rule 7. The Federal Rules of Evidence, Rule 601, completely rejects the principle of the dead man's statutes. The comment to Rule 601 states:
"The Dead Man's Acts are surviving traces of the common law disqualification *96 of parties and interested persons. They exist in variety too great to convey conviction of their wisdom and effectiveness. These rules contain no provision of this kind."
An effective summary of the case against the statutes appears in Ray, Dead Man's Statutes, 24 Ohio St.L.J. 89.[2]
This court in turn urges that the Minnesota Legislature give serious consideration to the repeal of Minn.St. 595.04.
Undesirable though it may be, § 595.04 is still the law of this state, and it must be construed so as to carry out the full intent of the legislature. This is so even though it "may produce a statutory rule of evidence that is strict and of which judges and text writers may disapprove." Pomerenke v. Farmers Life Ins. Co., 228 Minn. 256, 263, 36 N.W.2d 703, 707 (1949); In re Estate of Eklund, supra; Caldis v. Curtis Hotel Co., 255 Minn. 98, 95 N.W.2d 641 (1959); Engel v. Starry, 268 Minn. 252, 128 N.W.2d 874 (1964).
2. The substance of certain of the trial court's findings of fact which are supportive of its conclusions of law seemingly was derived directly or inferentially from the testimony of Frank relating to acts of the testator which he observed and to conversations between himself and testator.[3] The testimony as to conversations was purportedly given and received for the sole purpose of laying a foundation for Frank's ultimate opinion as to testator's mental capacity. However, it appears that the court then used this testimony in conjunction with other evidence as either substantive or direct evidence of mental capacity. This was error requiring a new trial unless other like evidence which the court could properly consider can be found to support that portion of the trial court's findings. Frank contends that the court's findings are supported by the testimony of disinterested persons, particularly by the testimony of Ruth Sheehan, Frank's wife. Frank asserts that Ruth is not an interested person for purposes of the Dead Man's Statute. *97 With this, we agree. It is well settled that the husband or wife of a party to litigation involving a claim to real property is an interested person for purposes of the Dead Man's Statute, Cocker v. Cocker, 215 Minn. 565, 10 N.W.2d 734 (1943); In re Estate of Eklund, supra, but that the husband or wife of a party to litigation involving a claim to personal property is not. Chard v. Darlington, 243 Minn. 489, 68 N.W.2d 405 (1955). Thus, Ruth was not an interested person within the meaning of the statute and her testimony was properly admitted and considered by the trial court and provided sufficient evidence to support the disputed findings. In addition, the trial court in its memorandum states that in arriving at its findings it has not given much weight to the uncorroborated testimony of either Frank or his wife. While it is true that the court may also have used Frank's testimony in formulating its findings, the effect of admitting or using otherwise inadmissible testimony in a trial to the court has been determined to be harmless error if the evidence is cumulative and there is other competent evidence in the case sufficient to justify the findings. Mankato Mills Co. v. Willard, 94 Minn. 160, 102 N.W. 202 (1905); Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N.W.2d 775 (1950); Werner v. Miller, 248 Minn. 75, 78 N.W.2d 63 (1956); Rule 61, Rules of Civil Procedure. In In re Estate of Palmer, 238 Minn. 549, 57 N.W.2d 409 (1953), this court held that when lack of testamentary capacity is proved by other competent evidence, error in admitting testimony otherwise inadmissible is harmless.
3. Appellant contends that a review of the record will leave this court with a definite and firm conviction that a mistake has been committed. Appellant correctly points out that the nature of our review of the findings of a trial court sitting without a jury is established by Rule 52.01, Rules of Civil Procedure, which in part provides:
"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."
It is true that "even though there is evidence to support a finding, the finding can be held to be clearly erroneous if `the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" In re Estate of Balafas, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972). However, such is not the case here. We have no definite and firm conviction that a mistake has been committed. We cannot say that there is no evidence reasonably tending to support the trial court's finding of testamentary incapacity. Accordingly, the finding of the trial court must stand. In re Estate of Palmer, supra.
Having given due regard to the opportunity of the trial court to judge the credibility of witnesses and considering the entire evidence, we hold, as in the Balafas case, "there is no justification for our interference either on the basis of lack of evidentiary support or because of a conviction that a mistake has been committed." 293 Minn. 98, 198 N.W.2d 262. Accordingly, we affirm.
Affirmed.
SHERAN, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.
NOTES
[*] Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.
[1] Minn.St. 595.04 provides: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless the testimony of such deceased or insane person concerning such conversation or admission, given before his death or insanity, has been preserved and can be produced in evidence by the opposite party, and then only in respect to the conversation or admission to which such testimony relates."
[2] Among the reasons Professor Ray enumerates for rejecting the statutes are: "(1) The statutes are based upon a fallacious philosophy, i.e., that the number of dishonest men is greater than the number of honest ones; and that self-interest makes it probable that men will commit perjury. These assumptions run contrary to all human experience.

"(2) The statutes create an intolerable injustice by preventing proof of honest claims and defenses. In seeking to avoid the possibility of injustice to one side they work a certain injustice to the other. * * *
"(3) The statutes are psychologically unsound. They do not disqualify many persons who are vitally interested in the outcome of the suit but who have no direct pecuniary interest such as spouses of parties [under certain circumstances], close relatives, or officials of corporate parties. On the other hand, they often disqualify certain totally disinterested persons or persons with only a slight pecuniary interest. The pecuniary interest limitation is unsound.
"(4) The statutes fail to accomplish their purported purpose since they suppress only a small part of the opportunities for perjured testimony. They block the testimony of the witness only as to certain subjects, leaving him free to testify falsely as to other matters if he sees fit to do so. Furthermore, a witness who will not stick at perjury will not hesitate to suborn perjury by getting a third person to testify as to those matters as to which his own testimony is barred.
"(5) The statutes impede the search for truth. The real hazard in shaping any exclusionary rule is that the jury cannot be expected to make sensible findings when it is deprived of substantial parts of available evidence bearing on the issue in dispute. The great danger thus lies in the suppression of truth.
"(6) The statutes underestimate the efficacy of cross-examination in exposing falsehood, and the abilities of the judge and jury to separate the false from the true. * * *
"(7) The statutes burden the parties with uncertainties and appeals. For a hundred years or more, our courts have been struggling with the interpretation of these statutes. The result is a labyrinth of decisions which have often brought confusion rather than clarity." Ray, Dead Man's Statutes, 24 Ohio St.L.J. 89, 107.
[3] Most particularly, those conversations relating to testator's continuing affection and concern for his sister, Beulah, and his intention to leave half of his property to her.